[No. B012223. Second Dist., Div. One. Dec. 18, 1987.]

ROBERT L. SMITH, a Minor, etc., et al., Plaintiffs, v.
PARKS MANOR et al., Defendants;
ALLIANZ INSURANCE COMPANY, Plaintiff in Intervention and
Appellant;
COUNTY OF LOS ANGELES, Defendant in Intervention and
Respondent.

## Counsel

Gilbert, Kelly, Crowley & Jennett, Clifford H. Woosley, Peter J. Godfrey and Tracy W. Goldberg for Plaintiff in Intervention and Appellant.

Bonne, Jones, Bridges, Mueller & O'Keefe, Greines, Martin, Stein & Richland, Martin Stein and Pamela Victorine for Defendant in Intervention and Respondent.

## Opinion

**SPENCER, P. J.—**

### Introduction

Intervener Allianz Insurance Company appeals from an order dismissing its complaint in intervention after the trial court sustained without leave to amend defendant County of Los Angeles's demurrer to its complaint in intervention.[1]

### Statement of Facts

On March 31, 1979, plaintiff Robert Lewis Smith was struck and injured by an automobile. At the time, plaintiff was a minor and a resident of defendant Parks Manor, a home for developmentally disabled persons. On August 10, 1979, plaintiff filed a complaint through his guardian ad litem, joined by his mother, Laura Smith, alleging his negligent supervision by defendants Parks Manor and Don Stinson. On the date of plaintiff Robert Smith's injury, defendant Parks Manor was insured by intervener. Consequently, intervener undertook the defense of the action, causing defendants to file a notice of intention to commence action against health care provider on December 30, 1980. In addition, at intervener's behest, defendants filed cross-complaints for apportionment of fault, Parks Manor on September 28,

---

[1] The order is appealable as a final determination of the matter pending between the parties. (Code Civ. Proc., § 904.1, subd. (a); *D'Hondt* v. *Regents of University of California* (1984) 153 Cal.App.3d 723, 726 [200 Cal.Rptr. 628], fn. 2.)

1981, and Don Stinson on August 2, 1982, seeking comparative and equitable indemnity from cross-defendant County of Los Angeles. The cross-complaints alleged Martin Luther King Hospital was negligent in its medical treatment of plaintiff Robert Smith following his injury on March 31, 1979, as a consequence of which his injuries were aggravated. Cross-defendant answered, placing the matter at issue.

On August 4, 1983, defendants settled their dispute with plaintiffs for the approximate sum of $630,000. Intervener paid the agreed-upon settlement on defendants' behalf. Thereafter, on November 8, 1983, defendants filed a claim for money or damages with cross-defendant; the claim was rejected on December 27, 1983. Subsequently, cross-defendant moved for judgment on the pleadings on the cross-complaints, asserting cross-complainants failed to state a cause of action for indemnity, in that intervener had indemnified them for the settlement with plaintiff and they had failed to comply with the claims filing procedures of the Government Tort Claims Act. The motion was granted on the ground intervener had become subrogated to the rights of cross-complainants and Don Stinson had failed to comply with claims filing procedures.

On October 19, 1984, intervener sought leave to intervene; leave was granted and intervener's complaint in intervention was deemed filed and served on November 13, 1984. On December 21, 1984, defendant in intervention County of Los Angeles demurred to the complaint in intervention, alleging intervener had failed to comply with the claim presentation requirement of the Government Tort Claims Act and the action was barred by the statute of limitations. The demurrer was sustained without leave to amend on January 17, 1985, and the instant appeal followed.

## CONTENTS

### I

Intervener contends the trial court erred in sustaining the demurrer without leave to amend, in that intervener, as defendants' and cross-complainants' subrogee, was not required to file a separate and redundant claim within the time limits specified in Government Code section 911.2 in order to satisfy the requirements of the Government Tort Claims Act.

### II

Intervener further contends the trial court erred in sustaining the demurrer without leave to amend, in that the complaint in intervention is not barred by the statute of limitations.

## Discussion

### I

Intervener contends the trial court erred in sustaining the demurrer without leave to amend, in that intervener, as defendants' and cross-complainants' subrogee, was not required to file a separate and redundant claim within the time limits specified in Government Code section 911.2 in order to satisfy the requirements of the Government Tort Claims Act. We agree.

Generally, an insurer of one who has paid damages arising out of a tort for which its insured is liable is subrogated to the rights of the party injured. (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 428 [296 P.2d 801, 57 A.L.R.2d 914].) Hence, an insurer who has paid a claim by an insured whom it is required by contract to indemnify is subrogated to its insured's right to indemnity from a third party who has contributed to the loss suffered by the insured. (Cf. *California Food Service Corp.* v. *Great American Ins. Co.* (1982) 130 Cal.App.3d 892, 898 [182 Cal.Rptr. 67]; *Patent Scaffolding Co.* v. *William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506, 512 [64 Cal.Rptr. 187].) An insurer's subrogated right is "to be put in the position of its insured . . . for the loss which the insurer has both insured and paid. [Citation.]" (*Commercial Union Assurance Co.* v. *City of San Jose* (1982) 127 Cal App.3d 730, 733 [179 Cal.Rptr. 814].) In other words, the insurer as subrogee stands in the same position as does an assignee—in the shoes of the subrogor or assignor.

Defendant County nevertheless argues subrogation is not at issue here, relying on *Liberty Mut. Ins. Co.* v. *Altfillisch Constr. Co.* (1977) 70 Cal.App.3d 789 [139 Cal.Rptr. 91]. *Liberty Mut. Ins. Co.* holds the right of subrogation "remains inchoate before loss and only matures into a legal concept after a loss to the insured property occurs." (At p. 796.) Defendant County asserts cross-complainants never suffered a loss in the instant matter; on their behalf, intervener reached a settlement with the injured plaintiffs, so the only entity which suffered a loss was intervener which directly paid the sum settled upon. This line of reasoning misses the point. Intervener reached a settlement agreement with the injured plaintiffs *on behalf* of its insured, cross-complainant Parks Manor, and the insured's employee, cross-complainant Stinson; that agreement obligated cross-complainants to pay a certain sum or, stated otherwise, created a settlement debt equivalent to a judgment debt. At that point, cross-complainants had suffered a loss which intervener was obligated by contract to indemnify; intervener did so.

It was not necessary for cross-complainants actually to pay the settlement sum out-of-pocket, then secure reimbursement, to suffer a loss. The creation

of the obligation by execution of the settlement agreement was in itself a sufficient loss to give rise to a mature right of subrogation. ■ The fundamental requirements for such a right are: "(1) Payment must have been made by the subrogee to protect his own interest. (2) The subrogee must not have acted as a volunteer. (3) The debt paid must be one for which the subrogee was not primarily liable. (4) The entire debt must have been paid. (5) Subrogation must not work any injustice to the rights of others." (*Grant v. de Otte* (1954) 122 Cal.App.2d 724, 728 [265 P.2d 952].) ■ Indisputably, intervener meets all of the above requirements. Hence, unquestionably, upon paying its insured's claim in extinguishment of the settlement debt, intervener became subrogated to the insured's right to seek equitable indemnity from defendant County. As the subrogee, intervener stood in cross-complainants' shoes. (*Commercial Union Assurance Co.* v. *City of San Jose, supra,* 127 Cal.App.3d at p. 733.)

■ Government Code section 911.2 requires a party to give notice to a governmental entity within 100 days of accrual of a cause of action; this is an essential prerequisite to the maintenance of an action against that entity for equitable indemnification. (*State of California* v. *Superior Court* (1983) 143 Cal.App.3d 754, 757 [192 Cal.Rptr. 198]; see also *Williams* v. *Horvath* (1976) 16 Cal.3d 834, 842 [129 Cal.Rptr. 453, 548 P.2d 1125].) ■ "The primary function of the claims act is to apprise the governmental body of imminent legal action so that it may investigate and evaluate the claim and where appropriate, avoid litigation by settling meritorious claims. [Citations.] The act should not be applied to snare the unwary where its purpose has been satisfied [citations]; consequently courts employ a test of substantial rather than strict compliance in evaluating whether a plaintiff has met the demands of the claims act. [Citations.] If the claim satisfies the purpose of the act without prejudice to the government, substantial compliance will be found. [Citations.]" (*Elias* v. *San Bernardino County Flood Control Dist.* (1977) 68 Cal.App.3d 70, 74 [135 Cal.Rptr. 621]; accord, *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 455, 456-457 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].) In determining whether there has been substantial compliance, the courts will ask, "Is there sufficient information disclosed on the face of the filed claim to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit?" (*Id.,* at p. 456.)

■ Where the claim is one for indemnification or contribution, it accrues when the indemnitee or party seeking contribution suffers a loss through payment of a judgment debt (or settlement) or through payment of more than his fair share of damages. (*People* ex rel. *Dept. of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744, 757 [163 Cal.Rptr. 585, 608 P.2d 673].) In analyzing the issue of timely presentation of a claim for indemnity,

the court notes: "Courts in other jurisdictions which have addressed similar contentions have uniformly concluded that when a tort defendant seeks indemnity from a governmental entity pursuant to a third party procedure, and thereby institutes his action before the indemnity claim has actually accrued, the defendant should not be required to file a claim. [Citations.]" (*Id.*, at p. 763, italics omitted.) Since the institution of the indemnity claim apprises the governmental entity of all information necessary to effectuate the purpose of the claims statutes even before the claim has matured, application of the claim filing requirement in this context largely would be meaningless or superfluous. (*Ibid.*) It certainly would be redundant. Accordingly, the court concludes, "when an equitable indemnity action is pursued prior to the accrual of the cause of action through a third party cross-complaint, no prior claim need be filed." (*Ibid.*, fn. omitted.)

In the instant matter, the insured filed cross-complaints against County, seeking equitable indemnity, on September 28, 1981, and August 2, 1982. At that time, no cause of action for indemnity had yet accrued pursuant to the applicable statute of limitations, in that settlement with the injured plaintiffs was not reached and payment was not made by the intervener in satisfaction of its contractual duty to its insured until August 4, 1983. Clearly, under the authority of *People* ex rel. *Dept. of Transportation* v. *Superior Court, supra,* 26 Cal.3d at page 763, the filing of the cross-complaints satisfied the requirements of the claims statutes.

Government Code section 901, which determines the accrual of a cause of action for the purpose of computing the time limit prescribed by section 911.2, was amended effective January 1, 1982 (Stats. 1981, ch. 856, § 1, p. 3286) to provide that "the date upon which a cause of action for equitable indemnity or partial equitable indemnity accrues shall be the date upon which a defendant is served with the complaint giving rise to the defendant's claim for equitable indemnity or partial equitable indemnity against the public entity." However, since Parks Manor's cross-complaint was filed prior to January 1, 1982, and Parks Manor was jointly and severally liable for the entirety of the settlement debt, the amendment has no application to the instant matter. (*State of California* v. *Superior Court, supra,* 143 Cal.App.3d 754, 759-760.)

Defendant County asserts, however, that intervener may not rely on cross-complainant Parks Manor's timely satisfaction of the claims statutes, but must have filed an independent and timely claim on its own behalf. In support of this position, defendant County relies on *Pacific Tel. & Tel. Co.* v. *County of Riverside* (1980) 106 Cal.App.3d 183, 193 [165 Cal.Rptr. 29]; *Roberts* v. *State of California* (1974) 39 Cal.App.3d 844, 847-848 [114 Cal.Rptr. 518]; *Lewis* v. *City and County of San Francisco* (1971) 21

Cal.App.3d 339, 341 [98 Cal.Rptr. 407] and *Peterson* v. *City of Vallejo* (1968) 259 Cal.App.2d 757, 765-766 [66 Cal.Rptr. 776]. In each of these cases, an injured party timely filed a claim with the governmental entity; another party also injured by the same transaction later sought to pursue a suit against the governmental entity without filing a separate claim. In each instance, the court held the second injured party could not rely on the claim filed by the original claimant, but was required independently to comply with the claim statutes. However, in each of these instances, the party seeking to proceed without independently filing a claim had suffered a separate and distinct injury. That is not the case in the instant matter.

◼ As noted *ante,* a subrogee's right of action is *not* independent and separate, but is equal to and limited by the right of action possessed by its insured; the subrogee simply stands in the stead of the original claimant and is subject to all defenses which could have been asserted against that party. (*Commercial Union Assurance Co.* v. *City of San Jose, supra,* 127 Cal.App.3d at p. 733.) In those circumstances, requiring the filing of a separate claim would be redundant and superfluous; the requirements of the claims statutes already had been satisfied. (See, e.g., *Atlantic Mut. Ins. Co.* v. *State* (1976) 50 App.Div.2d 356 [378 N.Y.S.2d 95] aff'd. 41 N.Y.2d 884 (393 N.Y.S.2d 994].)

Such a situation is analogous to a claim timely filed by an injured party who thereafter dies. The personal representative of the estate may maintain an action on behalf of the decedent (Prob. Code, § 573), standing in his stead, but there is no authority for the proposition the representative first must file an independent claim with the defendant governmental entity. Where the right of action is not separate and independent, but rather identical and wholly derivative (*Commercial Union Assurance Co,* v. *City of San Jose, supra,* 127 Cal.App.3d at p. 737), there is no purpose to be served by requiring the filing of a second claim. (See, e.g., *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d at p. 457 [filing of claim by representative plaintiff sufficient for maintenance of class action; "claimant" should not be equated with each class member].)

◼ In sum, the insured's September 28, 1981, filing of a cross-complaint prior to the accrual of the cause of action for equitable indemnity excused and took the place of timely filing a claim with cross-defendant County. The substitution of intervener as subrogee of the insured's cause of action did not change the nature of the claim and, hence, required no filing of an independent claim by intervener.

Intervener concedes the complaint in intervention does not plead timely compliance with the claims statutes. However, under the foregoing analysis,

it is possible for intervener to amend the complaint to plead the requisite facts. ■ It is an abuse of discretion to sustain a demurrer without leave to amend where there is a reasonable possibility the defect in the complaint can be cured by amendment. (*Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 118-119 [113 Cal.Rptr. 102, 520 P.2d 726].) ■ Accordingly, in the instant matter, where it is clear the defect can be cured by amendment, the trial court undeniably abused its discretion in sustaining the demurrer without leave to amend.

## II

■ Intervener further contends the trial court erred in sustaining the demurrer without leave to amend, in that the complaint in intervention is not barred by the statute of limitations. Again, we agree.

■ The applicable statute of limitations for actions seeking equitable indemnity is one year. (*De La Forest* v. *Yandle* (1959) 171 Cal.App.2d 59, 62 [340 P.2d 52].) A cause of action for indemnity accrues when the indemnitee suffers a loss through payment of a judgment or settlement debt. (*People* ex rel. *Dept. of Transportation* v. *Superior Court, supra,* 26 Cal.3d at p. 757.) ■ Hence, the statute of limitations began to run in the instant matter on or about August 4, 1983, the date settlement of the underlying action was paid.

■ It is well settled that the right of a subrogee to intervene is not dependent upon its own compliance with the statute of limitations. (*Buell* v. *CBS, Inc.* (1982) 136 Cal.App.3d 823, 826 [186 Cal.Rptr. 455].) As long as the original action is timely filed, a complaint in intervention based on the right of subrogation is timely, though filed after the expiration of the statute of limitations. (*County of San Diego* v. *Sanfax Corp.* (1977) 19 Cal.3d 862, 885 [140 Cal.Rptr. 638, 568 P.2d 363]; *Harrison* v. *Englebrick* (1967) 254 Cal.App.2d 871, 874-875 [62 Cal.Rptr. 831].)

■ Defendant County attempts to distinguish the foregoing cases on the ground they deal with workers' compensation statutes. However, the statutes in question "'simply gave statutory recognition to principles of equitable subrogation.'" (*Breese* v. *Price* (1981) 29 Cal.3d 923, 929 [176 Cal.Rptr. 791, 633 P.2d 987]; quoting from *County of San Diego* v. *Sanfax Corp., supra,* 19 Cal.3d at p. 876, fn. 7.) Defendant County would rely instead on *Bartalo* v. *Superior Court* (1975) 51 Cal.App.3d 526 [124 Cal.Rptr. 370] which holds, where an additional party seeks to enforce an *independent* right, that party's complaint in intervention or amended complaint in joinder will not relate back to the filing of the original complaint.

(At p. 533; accord, *Dominguez* v. *City of Alhambra* (1981) 118 Cal.App.3d 237, 243 [173 Cal.Rptr. 345].)

Clearly, the latter principle can have no application to a complaint in intervention based on a right to subrogation. As noted *ante* repeatedly, the right thus asserted is not independent, but identical to and wholly derivative of the right of the original complainant. (*Commercial Union Assurance Co.* v. *City of San Jose, supra,* 127 Cal.App.3d at p. 737.) Consequently, since the statute of limitations did not begin to run until on or about August 4, 1983, cross-complainants' premature filing of actions for indemnity on September 28, 1981, and August 2, 1982, protected intervener from the statute of limitations. Intervener simply was not obligated to file its complaint by August 4, 1984. It necessarily follows that the trial court erred in sustaining the demurrer on this ground.

The order is reversed. Intervener to receive costs on appeal.

Lucas, J., and Devich, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 2, 1988.