**AT & T CORP., Plaintiff Below, Appellant**

v.

**CLARENDON AMERICAN INSURANCE COMPANY, Genesis Insurance Company, Certain Underwriters at Lloyd's London and Certain London Market Insurance Companies, National Union Fire Insurance Company of Pittsburg PA., North American Specialty Insurance Company, and XL Specialty Insurance Co., Defendants Below, Appellees.**

No. 567, 2006.

Supreme Court of Delaware.

Submitted: March 14, 2007.
Decided: July 2, 2007.

---

John E. James and Sarah E. DiLuzio of Potter Anderson & Corroon, LLP, Wilmington, DE; David M. Halbreich and Michel Y. Horton of Morgan, Lewis & Bockius, LLP, Los Angeles, CA; John Edward Failla (argued) and Christopher C. Loeber of Morgan, Lewis & Bockius, LLP, New York City; Paul A. Zevnik of Morgan, Lewis & Bockius, LLP, Washington, DC; Cynthia Mahowald and Emily Barb-

our of AT & T, Washington, DC, of counsel, for Appellant.

John C. Phillips, Jr. and Brian Farnan of Phillips Goldman & Spence, P.A., Wilmington, DE; Douglas Mangel of Drinker Biddle & Reath, Washington, DC, of counsel, for Appellee Clarendon American Insurance Company.

Kevin F. Brady of Connolly Bove Lodge & Hutz, LLP, Wilmington, DE; William E. Smith and Cara Tseng Duffield of Wiley Rein, LLP, Washington, DC, of counsel, for Appellee Genesis Insurance Company.

David A. Denham of Bifferato & Gentilotti, LLC, Wilmington, DE; Martin J. Flannery, Jr. and David A. Richman of Pattison & Flannery, New York City, of counsel, for Appellees Faraday Capital Limited, Individually and as Representative of those Underwriters at Lloyd's and those other Companies Subscribing to Directors and Officers and Company Reimbursement Policy No. 509/QB405901.

Edward M. McNally and Mary B. Matterer of Morris James, LLP, Wilmington, DE; Jeffrey G. Weil (argued) and Jared S. Hosid of Dechert, LLP, Philadelphia, PA; Michael Manire and William P. Larsen, III of D'Amato & Lynch, New York City, of counsel, for Appellees National Union Insurance Company of Pittsburg PA. and North American Specialty Insurance Company.

Francis J. Murphy and Jonathan L. Parshall of Murphy Spadaro & Landon, Wilmington, DE, for Appellee XL Specialty Insurance Co.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

JACOBS, Justice:

AT & T Corp. ("AT & T") appeals from a judgment of the Superior Court dismissing this action brought by AT & T against several insurance carriers (the "D & O insurers").[1] Those carriers issued Director and Officer ("D & O") policies insuring At Home Corporation ("At Home") and At Home's directors and officers. AT & T, as At Home's largest shareholder, designated ten of its employees to serve as At Home directors.[2] At Home later declared bankruptcy, and thereafter, AT & T and the At Home Directors were sued jointly and severally for billions of dollars in damages. Being insolvent, At Home could not indemnify the At Home Directors for any liability and litigation costs resulting from those lawsuits (the "Underlying Litigation"). Accordingly, the At Home Directors requested the D & O insurers to advance their defense costs. The D & O insurers refused, taking the position that the At Home Directors had not incurred a covered "Loss" under the D & O policies. The At Home Directors then turned to AT & T for assistance in paying defense costs, settlements and judgments in the Underlying Litigation. AT & T agreed to do so, in exchange for which the At Home Directors assigned to AT & T their breach of contract claims against the D & O insurers.

AT & T then sued the D & O insurers in the Superior Court, both as assignee of its

---

1. The D & O insurers are Genesis Insurance Company, Clarendon America Insurance Company, North American Specialty Insurance Company, Faraday Capital Limited, individually and as representative of certain underwriters at Lloyd's London, and XL Specialty Insurance Company.

2. The AT & T employees who served as directors of At Home at AT & T's request are referred to in this Opinion as the "At Home Directors."

At Home director-employees, and as subrogee to those directors' coverage claims against the D & O insurers for defense costs and indemnification relating to the Underlying Actions.[3] The D & O insurers moved to dismiss AT & T's amended complaint on the grounds (*inter alia*) that: (1) the At Home Directors had suffered no "Loss" needed to trigger the D & O coverage, and (2) AT & T could not prevail on its equitable subrogation claim, because when it indemnified the At Home Directors, AT & T acted as a "volunteer." Applying California law, the Superior Court upheld both of the D & O insurers' contentions and dismissed the complaint.[4] This appeal followed.

Having analyzed the relevant California authorities and applied them to the facts pled in the complaint, we arrive at a result contrary to that reached by the Superior Court. Accordingly, we reverse.

## FACTS

The facts, which are summarized in the Opinion of the trial court, are drawn from AT & T's amended complaint, as is required on a motion to dismiss under Superior Court Rule 12(b)(6).

### Background: At Home and AT & T

At Home was formed in 1995 to provide internet access to subscribers of CATV companies. At Home's largest shareholder was Tele–Communications, Inc. ("TCI"), which by 1997 controlled 70 percent of the voting power of At Home stock. By 1999, TCI had been acquired by AT & T, which became At Home's new controlling stockholder.

At the time AT & T acquired TCI, At Home was experiencing financial difficulties. Although At Home's network performance was enhanced in 2001, by the spring of that year, At Home's revenue had sharply declined. AT & T stepped in and (among other things) infused $85 million in cash into At Home, but that company's financial situation continued to worsen. On September 28, 2001, At Home filed for federal bankruptcy protection.

### The Underlying Litigation

#### The Williamson Action

The Underlying Litigation was filed in 2002. In May 2002, the Bankruptcy Court created the At Home Bondholders' Liquidating Trust ("BHLT"). In November 2002, the trustee of the BHLT brought a damages action ("the *Williamson* action") against the At Home directors and officers, alleging various breaches of fiduciary duty. Those claimed breaches of duty (AT & T avers) constituted "Wrongful Acts" that fell within the scope of the D & O policies. In defending *Williamson*, the At Home directors retained legal counsel and incurred defense costs. In May, 2005, the BHLT trustee settled *Williamson* for approximately $400 million. AT & T contributed to that settlement on behalf of the At Home directors, who, because of AT & T's intervention and payment, did not have to contribute to the *Williamson* settlement amount.

#### The Leykin Action

In March 2002, At Home shareholders filed three securities class actions against At Home directors and officers. Those lawsuits were consolidated into the *Leykin* action. The consolidated *Leykin* complaint alleged claims for securities viola-

---

**3.** The Underlying Actions are *Williamson v. AT & T Corp., et al.*, No. CV 812506 (Cal.Super. Ct., Santa Clara Cty.) (*"Williamson"*) and *Leykin v. AT & T Corp. et al.*, No. 02CV1765 (S.D.N.Y.) (*"Leykin"*).

**4.** *AT&T Corp. v. Clarendon American Insurance, et al.*, 2006 WL 2685081 (Del.Super.Sept. 18, 2006) (*"Opinion"*).

tions, fraud and breach of fiduciary duty. In defending *Leykin,* the At Home directors retained counsel and incurred defense costs. In March 2006, the *Leykin* action was dismissed in its entirety. *Leykin* is currently on appeal.

### The D & O Insurers Deny Any Coverage And AT & T Agrees To Indemnify The At Home Directors

Although AT & T alleges that the claims against the At Home Directors in the Underlying Actions were covered by the D & O insurance policies, the D & O insurers denied coverage and declined to advance defense costs to the At Home directors.[5] Being bankrupt, At Home was unable to indemnify its directors and officers. In these circumstances, AT & T—whose employees had been serving as At Home Directors at AT & T's request—advanced the At Home Directors' defense costs and agreed to pay on their behalf any judgments or settlements in the Underlying Actions. In consideration for AT & T's indemnification agreement, the At Home Directors assigned to AT & T their rights to coverage under the D & O policies.

Because AT & T had agreed to indemnify them, the At Home Directors were never required to, nor did they, pay any defense costs or contribute to the *Williamson* settlement. Nor will those Directors be required to pay any defense costs, settlements or judgments in any future proceedings in *Leykin.* AT & T concedes that it:

> ... has paid all defense fees and costs and settlements, incurred in connection with the Leykin, James and Williamson Fiduciary Actions on behalf of the At Home Directors and Officers, and will pay any future defense fees and costs, settlements, or Judgments on behalf of

the At Home Directors and officers, in connection with Leykin.[6]

That conceded fact raises the question we are called upon to decide: whether AT & T's payment of defense and settlement costs in *Williamson,* and its agreement to pay any such costs and liabilities in *Leykin,* forecloses coverage under the D & O policies. That issue is governed by the terms of the D & O policies, which are next discussed.

### The D & O Policies

At issue is coverage under policies issued by the D & O insurers for the policy period July 8, 2001 through July 8, 2002. The primary insurer is Genesis Insurance Company ("Genesis"), and the four excess insurers are Clarendon America Insurance Company; North American Specialty Insurance Company; XL Specialty Insurance Company; and Faraday Capital Limited, individually and as representative of certain underwriters at Lloyd's and other companies. The policies issued by those four excess insurers followed form to (that is, they tracked) the terms and conditions of the primary Genesis policy issued to At Home. The excess policies provided various layers of coverage above the $10 million of Genesis primary coverage.

National Union Fire Insurance Company of Pittsburgh ("National Union") also sold primary coverage to At Home. The National Union policy provided $10 million in coverage for the policy period July 8, 1999 to July 8, 2000, and $15 million for the policy period July 8, 2000 to July 8, 2001. Those National Union policies were the subject of the At Home insurers' motion to dismiss, a motion in which National Union joined.

---

5. The D & O insurers have no duty to defend under the D & O policies.

6. Opinion, 2006 WL 2685081, at *4 (quoting ¶ 41 of the First Amended Complaint).

The National Union and the Genesis policies are structured and worded similarly. Coverage for At Home's directors and officers is triggered by a "Loss," which the policies define as an amount that the directors and officers are either "financially liable" or "legally obligated" to pay. The act or event that triggers coverage must arise from an actual or alleged "Wrongful Act," for example, a "breach of duty." Coverage is excluded if At Home indemnifies its directors and officers, but coverage is not excluded merely because a third party (such as AT & T) indemnifies At Home's directors and officers.

The critical terms of the respective National Union and the Genesis D & O policies are set forth in their insuring agreements and their definitions of "Loss." Those terms are excerpted (on a side by side basis for ease of reference) in the chart below.

The insuring agreement language of each policy is as follows:

| | National Union | Genesis |
|---|---|---|
| *Insuring Agreement* | The policy shall pay the Loss of each and every Natural Person Insured(s) arising from a Claim ... for any actual or alleged Wrongful Act in their respective capacities as Natural Person Insured(s), except when and to the extent that the Company [At Home] has indemnified the Natural Person Insured(s). | The insurer will pay, on behalf of the Directors and Officers, Loss arising from Claims first made ... against the Directors or Officers, individually or collectively, for a Wrongful Act, except for such Loss which the Company [At Home] pays to or on behalf of the Directors and Officers.... |

And the policies define "Loss" as follows:

| | National Union | Genesis |
|---|---|---|
| *Definition of "Loss"* | "Loss" means damages, judgments (including any award of prejudgment and post-judgment interest), settlement ... however, Loss shall not include ... any amount for which the Insured are not financially liable or which are without legal recourse to the Insureds.... | "Loss" shall mean any amounts which the Directors or Officers are legally obligated to pay ... for Claims made against the Directors or Officer ... including damages, Judgments, orders, Settlements and Defense Costs.... |

### The Superior Court Decision

In the Superior Court proceedings, the defendant D & O insurers moved to dismiss AT & T's first amended complaint under Superior Court Rule 12(b)(6). The pivotal question was "whether the ten AT & T employees who serve as Directors and Officers of At Home suffered a 'loss' within the meaning of the relevant policies."[7] The D & O insurers argued—and the Superior Court held—that under California law, which governs this dispute, the At Home Directors suffered no "Loss" because they never paid, and never did or will incur any obligation or liability to pay, their defense costs or any judgment or settlement in the Underlying Litigation. Because the At Home Directors had no claim against the D & O insurers for coverage, AT & T, as their assignee, had no greater rights than the At Home Director-assignors. Nor, the Superior Court held, did AT & T have a legally cognizable claim for equitable subrogation, because under California law, the subrogee (AT & T) must not have acted as a volunteer, but in indemnifying the At Home directors AT & T had acted as a volunteer.

### THE CONTENTIONS AND THE ISSUES PRESENTED

On this appeal, AT & T claims that the Superior Court erred as a matter of

7. Opinion, 2006 WL 2685081, at *4.

law in holding that the complaint failed to allege a cognizable claim that: (1) the At Home Directors had suffered a "Loss" that was covered under the D & O policies, and (2) AT & T was equitably subrogated to the claims of the At Home Directors. Those claims generate the two issues presented on this appeal. Because the dispute involves the Superior Court's grant of a motion to dismiss and its interpretation of insurance policy language, our review is *de novo;*[8] requiring us to determine whether the trial court erred "in formulating or applying legal precepts."[9]

Our analysis begins with the question of whether the At Home Directors suffered a "Loss" that triggered coverage under the D & O policies. We conclude that the Directors did suffer a covered "Loss," and that AT & T, as those Directors' assignee, was entitled to enforce the Directors' contract claims against the D & O insurers. We then consider the second issue—whether AT & T was equitably subrogated to the claims of the At Home Directors—and conclude that AT & T was equitably subrogated. All parties agree that these issues are governed by California law.

## ANALYSIS

### I. Whether The At Home Directors Suffered A "Loss" That Triggered Coverage Under The D & O Policies

■ It is undisputed that the At Home Directors never paid any litigation defense costs in the Underlying Litigation or contributed to the *Williamson* settlement. Nor will those directors be required to pay any future defense or settlement costs or any judgment in *Leykin.* For the At Home Directors to have suffered a "Loss" covered by the D & O policies, therefore, it must be inferable from the complaint's allegations that those directors became "legally obligated" or "financially liable" to pay any defense costs they incurred and any judgment or settlement in the Underlying Actions.

The Superior Court held that no such inference could be drawn from the complaint, because AT & T had undertaken, on behalf of the At Home Directors, to pay all defense costs, judgments and settlement obligations attributable to those directors in the Underlying Litigation.[10] As the trial court stated in its Opinion:

> Simply stated, the At Home Directors are not, and have never been, "legally obligated to pay" or "financially liable." Nowhere in the record is there a "document or reference ... which specifically and clearly establishes an obligation per-

8.  *AeroGlobal Capital Mgmt., LLC. v. Cirrus Indus., Inc.,* 871 A.2d 428, 444 (Del.2005); *Phillips Home Builders, Inc. v. Travelers Ins. Co.,* 700 A.2d 127, 129 (Del.1997).

9.  *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.,* 624 A.2d 1199, 1204 (Del.1993).

10.  The Superior Court relied on the language of the Assignments and the *Williamson* settlement agreement. The Assignments pertinently declare that AT & T: (1) has paid for all of the Assignors' "defense costs and fees," (2) will indemnify the Assignors for "liability that results from any settlement or judgment," and (3) will "assume responsibilities for the fees and expenses incurred by the Assignors in any continued litigation in conjunction with any claim filed against any Assignor." The *Williamson* settlement agreement pertinently provides that "[o]n or before May 24, 2005.... AT & T shall pay on behalf of itself and the Individual Defendants the sum of $340,000,000 to Williamson by wire transfer to the escrow agent selected and paid for by Williamson and reasonably acceptable to AT & T...." (Opinion, 2006 WL 2685081, at *12, note 79).

sonal to "the ... At Home Directors" which obligated or required the directors to pay a portion of the *Williamson Fiduciary* settlement or the costs of defending the Underlying Litigation.... In fact, in this case, the Assignments ... establish that these At Home Directors have paid nothing and will never be obligated to pay anything. This case is controlled by California law, and *Pan Pacific*[11] and *PLM*[12] make clear that unless the At Home Directors made payments or incurred an obligation to pay, there is no "loss" under the Policies.[13]

The question is whether, as a matter of California law, AT & T's agreement to indemnify the At Home Directors precludes any inference that those Directors became "legally obligated" to pay those defense costs or to pay or contribute towards any judgment or settlement. We conclude that the Superior Court, by answering that question in the negative, erred as a matter of law for two separate reasons. First, the language of the D & O policies supports a contrary conclusion. Second, the California cases do not affirmatively require, in order to establish a "Loss," that the directors who are insured under a D & O policy must actually suffer the entry of a judgment, or otherwise contractually promise to pay any judgment and/or costs of defense.

### A. The Policy Language

If the D & O insurers wanted their policies unambiguously to preclude coverage of losses incurred by the named insureds who are indemnified by a third party (here, AT & T), the insurers knew how to achieve that result. Both the National Union and the Genesis policies insure against a "Loss" of the Directors and Officers resulting from any "Wrongful Act" committed in those capacities—except where *the Company* (here, At Home) has indemnified them.[14] No similar exception is created for "Losses" that are indemnified by a party *other than The Company*. The D & O insurers could easily have added a second exception from coverage to capture losses indemnified by third parties, but they did not. Nor is it a satisfactory answer for the D & O insurers to argue—as they do here—that adding such a second coverage exception was unnecessary, because that same result is achieved under the policies' definition of "Loss." If that is so, then under the policies' definition of "Loss," losses indemnified by *the Company* should not be covered either, yet the D & O insurers carved out from coverage only Losses indemnified by the Company. The unavoidable inference is that (i) such an express "carve out" was needed, because otherwise losses indemnified by the Company would be covered by the D & O policies; and (ii) the absence of a parallel carve out for a "Loss" indemnified by third parties indicates that such indemnified "Loss[es]" were intended to be covered. At a minimum this incongruity significantly undercuts the D & O insurers' position and to that contrary inference the

---

11. *Pan Pacific Retail Properties, Inc. v. Gulf Ins. Co.*, 2004 WL 2958479 (S.D.Cal.), *aff'd in part, rev'd in part, and remanded*, 466 F.3d 867 (9th Cir.2006).

12. *PLM, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA.*, 1986 WL 74358 (N.D.Cal.), *aff'd*, 848 F.2d 1243 (9th Cir.1988).

13. Opinion, 2006 WL 2685081, at *12.

14. The National Union policy expressly excepts from its Insuring Agreement, Losses "when and to the extent that the Company [i.e., At Home] has indemnified the Natural Person Insured(s) [i.e., the Directors and Officers]." The Genesis policy excepts out "such Loss which the Company pays to or on behalf of the Directors and Officers...."

D & O insurers offer no satisfactory response. By failing to credit that inference in its analysis, the Superior Court erred as a matter of law in dismissing the complaint for failure to state a claim.

### B. The California Case Law

The trial court also read the California case law to require dismissal of the D & O coverage claim. We do not interpret the California law to mandate that result. The Superior Court's apparent reading of California law is that a liability to pay defense costs and any judgment or settlement that would be a covered "Loss" under the D & O policies, is extinguished where a third party promises to indemnify the directors against that "Loss." That reading fails to take into account that, if AT & T had not intervened, the At Home Directors would have been at all times personally liable to their attorneys for the cost of their defense and would also have been required to contribute out of their own pockets their allocated portion of the *Williamson* settlement.

Under California law, an insured becomes legally obligated to pay legal expenses as soon as the legal services are rendered.[15] For that reason, legally it does not matter (in the Superior Court's words) that "the record contains no 'document or reference ... which specifically and clearly establishes an obligation personal to the ... At Home Directors which obligated or required the directors to pay

... the costs of defending the Underlying Litigation.' "[16] Under California law, the At Home Directors' liability to pay their defense costs arose once their lawyers began performing services on their behalf. And even though AT & T agreed to pay those defense costs, the At Home Director clients would remain liable to their attorneys if, for whatever reason, AT & T reneged on its agreement.[17] Only if the At Home Directors' defense counsel had contractually agreed to look solely to AT & T for payment of their fees would the At Home Directors be relieved from liability. The amended complaint alleges no such agreement by defense counsel.

That reasoning applies equally to the *Williamson* settlement costs, which AT & T undertook to (and did) pay on behalf of the At Home Directors. Again, the trial court's Opinion fails to take into account that, had AT & T reneged on its indemnification undertaking and refused to pay the *Williamson* settlement, the At Home Directors would have been subject to personal liability for any judgment subsequently entered against them in the *Williamson* action.

In concluding otherwise, the Superior Court reasoned that the "settlement agreement in the *Williamson* Fiduciary Action expressly provides that *only* AT & T is promising to pay the settlement amount," and that "[t]he plaintiffs in *Williamson* have no recourse against the At

---

**15.** *Gon v. First State Ins. Co.,* 871 F.2d 863, 864 (9th Cir.1989) (citing California cases and holding that a D & O insurer "must pay legal expenses as they are incurred, because an insured becomes legally obligated to pay legal expenses as soon as the services are rendered.").

**16.** Opinion, 2006 WL 2685081, at *12.

**17.** *See, Baer v. Assoc. Life Ins. Co.,* 202 Cal. App.3d 117, 123, 248 Cal.Rptr. 236 (1988)

("[T]he assignor of the contract cannot be released from his/her burden of obligation to the other contracting party absent a novation."); *accord,* RESTATEMENT (SECOND) OF CONTRACTS § 318(3) (1981) ("Unless the obligee agrees otherwise, neither delegation of performance nor a contract to assume the duty made with the obligor by a person delegated discharges any duty or liability of the delegating obligor.").

Home Directors if AT & T fails to make that payment." [18] That is accurate, but materially incomplete. The *Williamson* settlement agreement goes on to provide that if the agreement is not approved by the At Home Bankruptcy Court, or if any approval is stayed or reversed on appeal, "the settlement shall ... become null and void and the parties shall return to their respective positions *ex ante*, as though this settlement had never occurred, and the ... Action will be returned to the trial calendar for trial setting and trial." [19] Thus, had AT & T reneged on the settlement agreement, the settlement would never be presented to, let alone approved by, the Bankruptcy Court. As a result, the At Home directors would be required to defend themselves at a trial and be subject to an *in personam* judgment against them in the event they did not prevail.

Had AT & T never undertaken to indemnify the At Home Directors, or had AT & T breached that undertaking, the D & O insurers would never have been in a position to argue that the At Home Directors incurred no "Loss" that triggers D & O coverage. The D & O insurers are able make this argument only because AT & T made and honored its commitment—a fact that elevates irony to new heights. The question is whether under California law, AT & T's commitment—without which the At Home Directors would have been entitled to coverage of their defense and settlement costs under the D & O policies—divested those Directors of that entitlement. No California case cited to us mandates that result.

The Superior Court read the cited California cases discussed in its Opinion to require that for the At Home Directors to have incurred a covered "Loss," they must have either have suffered the entry of a judgment against them or promised to pay any defense costs and judgments, including a judgment entered as part of a settlement. With respect to the defense costs, that conclusion is incorrect because, as previously discussed, the directors incurred liability to pay defense costs as soon as their counsel performed services on their behalf. As for the At Home Directors' liability for the *Williamson* settlement, the California case law is less clear.

In its Opinion, the Superior Court held that the cases cited by AT & T did not support AT & T's position, because the settlements in those cases involved either the entry of a judgment against the settling directors or an obligation on their part to pay a certain amount "equivalent to a judgment debt." [20] For example, in *Xebec Dev. Partners, Ltd. v. National Union Fire Ins. Co.,*[21] the parties reached a settlement that was reduced to a joint and several consent judgment against the company and its officers and directors. The directors and officers then assigned their coverage rights under their D & O insurance policy to the plaintiff in exchange for the plaintiff's promise not to execute on the judgment. In a subsequent insurance coverage litigation, the California court rejected the argument of the insurer (National Union) that the individuals had suffered no covered "loss" in light of the covenant not to execute, because the directors were liable under the consent judgment. Similarly, in *Smith v. Parks*

---

18. Opinion, 2006 WL 2685081 at *13.

19. *Williamson* Settlement Agreement, ¶ 1 (A 2727); ¶ 2.4 (A 2728).

20. Opinion, 2006 WL 2685081, at *12.

21. 12 Cal.App.4th 501, 15 Cal.Rptr.2d 726 (1993) ("*Xebec*").

*Manor*,[22] a personal injury case, a liability insurer, acting on behalf of the defendant insureds, reached a settlement with the injured plaintiffs under which the insureds were obligated "to pay a certain sum or, stated otherwise, created a settlement debt equivalent to a judgment debt." The court held that "[a]t that point [the defendants] had suffered a loss which [the insurer] was obligated by contract to indemnify...."[23]

The California cases upon which the Superior Court relied can fairly be read to hold that a settlement that involves a consent judgment being entered against the insured is *sufficient* to constitute a covered "Loss" under the D & O policies at issue. But, those cases cannot be read definitively to hold that under California law such a judgment against the insured directors is *essential* to trigger coverage.[24] Indeed, no authoritative California decision cited to us definitively so holds.

The only case that arguably could be read to require a judgment or other legally binding obligation to pay a settlement as a condition for coverage, is a federal court opinion, *PLM, Inc. v. National Union Fire Insurance Company of Pittsburgh, PA.*[25] *("PLM")*. In that case, PLM settled a breach of contract and fraud action brought by Pillsbury against PLM and certain PLM directors and officers. PLM sought reimbursement of a portion of the settlement payment from National Union, which had issued certain D & O policies covering PLM's directors and officers. National Union denied coverage. In a subsequent lawsuit by PLM against National Union, the federal court ruled that PLM's directors had suffered no covered "loss," because they paid no claim and were not legally obligated to pay, even though the PLM directors had individually guaranteed some of the promised settlement payment. Affirming a District Court judgment in favor of National Union, the Ninth Circuit stated:

> We think it clear that in this case execution of the guarantees created only a contingent obligation to pay on the part of the directors and officers. It was not an obligation to pay and it never became an obligation to pay. Hence, there was

**22.** 197 Cal.App.3d 872, 243 Cal.Rptr. 256 (1987).

**23.** *Id.* at 259.

**24.** The Superior Court also relied on *Pan Pacific Retail Properties, Inc. v. Gulf Ins. Co.*, 2004 WL 2958479 (S.D.Cal. July 14, 2004), *aff'd in part, rev'd in part, and remanded*, 466 F.3d 867 (9th Cir.2006) but that case is distinguishable. There, Pan Pacific and Western, who were parties to a merger, sued their respective insurers, Gulf and Twin City, alleging that the insurers had wrongfully refused to indemnify them against liability for claims, expenses and damages arising out of a class action suit attacking the merger. Twin City, which had issued a D & O policy insuring Western and its directors and officers, moved for summary judgment. Twin City claimed that Western suffered no "Loss" within the meaning of the D & O policy because Pan Pacific, and not Western, paid the defense costs and settlement in that class action suit.

The Court granted Twin City's motion, holding that (1) because Western had paid no portion of the settlement, Western suffered no covered "Loss;" and (2) any payment by Twin City would constitute an impermissible windfall for (the former) Western and its directors and officers. Insofar as the *Pan Pacific* ruling is driven by the fact that D & O coverage of the settlement would result in a double recovery to the insured (see 466 F.3d at 878), it is inapposite here. Any recovery of the *Williamson* settlement against the D & O insurers would not constitute a windfall to, or double recovery by, AT & T, because AT & T has yet to receive a single recovery. Any recovery by AT & T would merely reimburse AT & T for what it paid on behalf of the At Home Directors.

**25.** 1988 WL 58031, 848 F.2d 1243 (9th Cir. 1988) (Table).

no loss as defined by the D & O provision.... PLM claims that the words "legally obligated to pay" include situations in which a payment is made by third persons on behalf of a director or officer. Since the payments made by [PLM] eliminated potential liability of all defendants in the Pillsbury lawsuit, a portion of the payments arguably was made on behalf of the directors and officers. Nonetheless, PLM's argument fails because potential liability is not equivalent to a legal obligation to pay. The directors and officers were not legally obligated to make payments to Pillsbury and therefore the payments made on their behalf were not recoverable under the D & O provision.[26]

*PLM* is an unpublished ruling by a federal court attempting to apply California law. Because *PLM* is not an opinion by a California state court, it is not an authoritative pronouncement of California law on the issue before us.[27] Moreover, under Ninth Circuit Local Rules *PLM*, as an unpublished opinion, cannot be cited as precedent in that Circuit or in any courts thereof, except in limited circumstances not applicable here.[28] And, lastly, the *PLM* opinion cites no California case to support its conclusions, or otherwise attempts to explain why the California courts would adopt the *PLM* Court's rationale. Accordingly, we do not regard PLM as persuasive evidence of California law or consider ourselves obligated to follow that decision or accord it significant weight.[29] In discharging our independent obligation to ascertain how the California state courts would rule on the precise issue presented to us, we must, therefore, look to other sources.

We begin with the proposition, which the insurers themselves concede, that the *Williamson* settlement payment would be a covered "Loss" if the *Williamson* settlement, like that in *Xebec*, had been structured so that a consent judgment was first entered against the At Home Directors, and then paid by AT & T. In terms of economic substance, a settlement so structured would be identical to the different settlement form actually employed in *Williamson*. That being the case, the D & O insurers' position necessarily reduces to the proposition that coverage under their policies turns entirely upon the matter of settlement structure. The question is whether the California courts would hold

---

**26.** 1988 WL 58031, at **1–2.

**27.** *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 178, 61 S.Ct. 176, 85 L.Ed. 109 (1940) ("The highest state court is the final authority on state law, ... but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State.... An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question.") (internal citations omitted).

**28.** Ninth Circuit Rule 36–3 provides that unpublished dispositions or orders of that Court "are not precedent, except where relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion." Rule 36–3(a). Moreover, because *PLM* was decided before January 1, 2007, it may not be cited to courts of the Ninth Circuit, except where relevant for the foregoing purposes, or for factual purposes, or for purposes of a request to publish the disposition, or a request for rehearing, or to demonstrate the existence of a conflict among opinions, dispositions, or orders. Rule 36–3(c).

**29.** *See Raymond Townes v. Sunbeam Oster Co.*, 50 S.W.3d 446, 452 (Tenn.App.2001) ("When a federal court undertakes to decide a state law question in the absence of authoritative state precedent, the state courts are not bound to follow the federal court's decision.")

such adherence to form is *essential* for D & O coverage to attach. We find no indication that the California courts would so hold. Indeed, what indications are available to us point in the opposite direction.

Those indications are found in *Xebec*. There (to reiterate), the settlement of the underlying litigation against the defendants (Xebec and its directors)—all of whom were insured by National Union— took the form of a transaction where: (i) Xebec and its directors stipulated to a judgment in favor of the plaintiff (XDP), in consideration for (ii) which XDP agreed not to execute on its judgment, and (iii) Xebec assigned to the plaintiff its rights to coverage from the D & O insurer. National Union denied coverage, resulting in the plaintiff suing the insurer to recover under the D & O policies. National Union argued *(inter alia)* that because of the plaintiff's covenant not to execute on its judgment against Xebec and the two directors, those policyholders would never be required to pay the plaintiff's claim and, therefore, had no "loss" that triggered coverage. The insureds having no valid claim for coverage, XDP could not recover as their assignee.

Reversing a California Superior Court judgment in favor of National Union, the California Court of Appeals held that the policyholders had suffered a "loss" covered by the D & O policy, for which the plaintiff XDP, as the policyholders' assignee, was entitled to recover from National Union. Ruling, in effect, that the existence of a covered "loss" should depend on economic substance and not transactional form, the California Court of Appeals stated:

Assuming, for purposes of analysis, that the settlement accurately reflected, and that the arbitration award and judgment sufficiently implemented, a legally enforceable obligation upon [the policyholders] to fund an actual cash payment to XDP, it would be an idle exercise to require [the policyholders] to fund an actual cash payment to XDP and then to pursue their own right of indemnity against National Union. Given these admittedly hypothetical assumptions, the result would be essentially the same in either case: National Union would pay the sum, XDP would receive the sum, and [the policyholders] would neither be wealthier nor poorer for the experience. In a sense [the policyholders] may be regarded as middlemen, and the assignment and covenant not to execute may be regarded as mechanisms by which the transaction can be simplified by permitting the middlemen to withdraw in order to allow XDP to proceed directly against National Union. There is no apparent just purpose to be served, in these circumstances, on a hypertechnically literal payment from [the policyholders] to XDP.[30]

In this case the Superior Court found *Xebec* to be factually distinguishable, because in *Xebec* a consent judgment was entered against the insured defendants as part of the settlement structure, whereas in *Williamson* no judgment was entered against the At Home Director defendants. Because of the consent judgment, the insured director-defendants in *Xebec* had an "obligation to pay." In reality, however, that "obligation" was formalistic, because the plaintiff (XDP) had agreed not to execute on the judgment, but instead to look to the D & O insurer for its recovery. The *Williamson* settlement in this case differs from *Xebec* only in that here the settling parties by-passed the "idle exercise" intermediate step of requiring the At Home Directors to consent to a judgment that they would never have to pay. Stated

**30.** *Xebec Dev. Partners, Ltd.,* 15 Cal.Rptr.2d at 744.

differently, although *Xebec* and this case differ in that single respect, in terms of economic substance the settlements in both cases were identical, making the *Xebec* court's rationale equally applicable to the form of settlement structure employed in *Williamson.*

Here, as in *Xebec*, the insured At Home Directors may be regarded "as middlemen, and the assignment and [the *Williamson* Settlement Agreement] may be regarded as mechanisms by which the transaction can be simplified by permitting the middlemen to withdraw in order to allow [AT & T] to proceed directly against [the D & O insurers]." Just as in *Xebec* there was "no apparent just purpose to be served by insisting ... on a hypertechnically literal payment from [the policyholders] to XDP[,]" no just purpose would be served in this case by requiring a hypertechnical entry of judgment that the settling parties knew from the outset that the At Home Directors would never be required to pay. Thus, although *Xebec* involved a settlement one ingredient of which was a consent judgment, nothing in *Xebec* suggests that the judgment was *essential* to the result, such that if the California court had confronted the facts in this case, the outcome would be any different.

Nor does any other authoritative California decision cited to us require us to reach the result argued for by the D & O insurers here. We therefore conclude that under California law the At Home Directors suffered a covered "Loss" under the D & O policies. Accordingly, those Directors had a cognizable legal claim against the D & O insurers, which AT & T, as their assignee, became entitled to enforce. In concluding otherwise, the Superior Court legally erred.

## II. Whether AT & T Has Standing To Sue As the Directors' Equitable Subrogee

■ We turn next to the second issue raised on this appeal: whether AT & T is entitled to sue the D & O insurers on a theory of equitable subrogation.[31] We conclude that it is, and that the Superior Court erred in holding otherwise.

■ As the Superior Court correctly found, to be equitably subrogated under California law, a party paying the debt of another must satisfy the following prerequisites: "(1) Payment must have been made by the subrogee to protect its own interest. (2) The subrogee must not have acted as a volunteer. (3) The debt paid must be one for which the subrogee was not primarily liable. (4) Subrogation must not work any injustice to the rights of others."[32] The sole issue relating to subrogation, as the trial court properly noted, is whether AT & T acted as a volunteer when it made the payments on behalf of the At Home Directors. The Superior Court held that AT & T acted as a volunteer, because the complaint does not allege that AT & T was legally obligated to indemnify those Directors.[33]

---

**31.** Because we hold that AT & T is the assignee of valid claims against the D & O insurers, as a technical matter we need not reach the subrogation issue. We do so, however, to avoid any potential controversy over AT & T's standing to sue in the proceedings on remand to the trial court.

**32.** Opinion, 2006 WL 2685081, at *11 (quoting *Caito v. United California Bank,* 20 Cal.3d

694, 144 Cal.Rptr. 751, 576 P.2d 466, 471 (1978) (internal citations omitted)).

**33.** As the trial court noted (quoting from a statement by AT & T's counsel at oral argument), "... AT & T was not obligated to indemnify those directors and officers, it was permissive indemnification." Opinion, 2006 WL 2685081, at *13.

In concluding that AT & T must have been legally obligated to indemnify the At Home Directors in order not to be deemed a volunteer for subrogation purposes, the Superior Court misread California law. AT & T claims that it indemnified the At Home Directors not because it was legally obligated to do so, but because it was protecting its own interests. The narrow issue is whether the complaint states a cognizable claim that AT & T indemnified those Directors "to protect its own interest." Under California law, a subrogee need not have a legal obligation to indemnify a subrogor in order to have an interest worthy of protection for subrogation purposes. The California courts:

> ... have given a very liberal interpretation of the "interest" required to distinguish a person from being a volunteer. "It would seem that one acting in good faith in making his payment, and under a reasonable belief that it is necessary to his protection, is entitled to subrogation, even though it turns out that he had no interest to protect." [34]

Under California law, a "volunteer" has been defined as a "stranger or intermeddler who has *no interest to protect* and is under no legal or moral obligation to pay under the circumstances." [35] Although AT & T was not legally obligated to indemnify the At Home Directors, the complaint alleges ample facts that, if taken as true, would establish an interest that AT & T, as a reasonable member of the business community, was entitled to protect. AT & T was the majority stockholder of At Home and, as such, was entitled to select the persons it would designate to the subsidiary's board. But for AT & T having requested them to do so, the At Home Directors would not have served as directors of At Home, and would not have been sued in the Underlying Litigation. The complaint specifically alleges that the At Home Directors were sued for actions they took as directors and officers of At Home, an AT & T subsidiary. Because AT & T had other subsidiaries and would likely acquire subsidiaries in the future, it is inferable that AT & T knew it would likely ask other AT & T employees to serve as those subsidiaries' officers and directors. To persuade its employees to do that, AT & T must be able credibly to assure those employees that they would be protected from financial ruin while serving as a director or officer of an AT & T subsidiary. In these circumstances, AT & T had a legally cognizable interest that it was entitled to protect by paying indemnification that AT & T was not legally obligated to provide.

The Superior Court interpreted California law to require that AT & T must have been legally (even though not primarily) obligated to indemnify the At Home Directors in order to have a protectible "interest" for subrogation purposes. In so doing, the trial court erred.

## CONCLUSION

For the foregoing reasons, the judgment of the Superior Court dismissing the complaint is reversed, and the case is remanded for proceedings consistent with this Opinion.

---

34. *Employers Mut. Liab. Ins. Co. of Wis. v. Pac. Indem. Co.*, 167 Cal.App.2d 369, 379, 334 P.2d 658 (1959) (citations omitted).

35. *Id.* at 380–81, 334 P.2d 658 (emphasis added).