[No. AO21244. First Dist., Div. Five. June 9, 1983.]

THE STATE OF CALIFORNIA et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
SHORTSTOP et al., Real Parties in Interest.

**COUNSEL**

John K. Van de Kamp, Attorney General, Nelson Kempsky, Chief Deputy Attorney General, Richard D. Martland, Chief Assistant Attorney General, James S. Schwartz and Edward P. Garson, Deputy Attorneys General, for Petitioners.

No appearance for Respondent.

John R. Williams and Williams, Kelly, Polverari & Skelton for Real Parties in Interest.

**OPINION**

**HANING, J.**—By petition for extraordinary writ the State of California and the California Department of Highway Patrol seek review of an order of respondent superior court overruling their general demurrer to a cross-complaint for indemnity. The dispositive question is whether in the circumstances of record the cross-complainants were required to comply with the claim filing requirements of the California Tort Claims Act (Gov. Code, §§ 810 et seq., 910 et seq.) and to allege in their cross-complaint that they had done so. We hold that they were.

On May 26, 1981, plaintiffs (husband and wife) filed an action against Shortstop (a corporation) and Brock (an individual) seeking damages for bodily injury, property damage and loss of consortium arising out of a collision between a truck driven by plaintiff husband and a truck owned by Shortstop and driven by Brock. Answers were filed for Shortstop on October 21, 1981, and for Brock on December 10, 1981. Each answer alleged, among other things, that the incident was wholly or partially due to the acts of others and that fault

should be comparatively apportioned among all responsible parties in light of *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899]. On September 13, 1982, Shortstop and Brock moved for leave to file a cross-complaint for indemnity, under *American Motorcycle,* against the highway patrol and a local fire district, asserting in their moving papers that "said proposed Cross-Defendants were pulling a car out of a ditch off Highway 17 and failed to properly warn Defendants . . . that both lanes were blocked to through traffic" and that these facts had been only recently discovered. On October 25, 1982, the motion was granted and Shortstop and Brock filed their cross-complaint.

The cross-complaint alleges a cause of action for indemnity in general terms and prays for a declaration that the state and local agencies are obligated to indemnify Shortstop and Brock for any judgment which might be entered against them upon the plaintiffs' complaint. The cross-complaint does not allege compliance with the Tort Claims Act; petitioners demurred to the cross-complaint on this ground. The demurrer was overruled. This writ petition followed. Concluding that the questions raised are of significant legal impact we issued an alternative writ of mandate. (Cf. *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].)

■ Where the claim filing requirements of the Tort Claims Act are applicable, "[t]imely compliance . . . and rejection of the claim by the governmental agency must be pleaded in order to state a cause of action." (*Dujardin* v. *Ventura County Gen. Hosp.* (1977) 69 Cal.App.3d 350, 355 [138 Cal.Rptr. 20]; cf. Gov. Code, § 945.4.) The claim filing requirements apply to "all claims for money or damages against the state . . . for an injury for which the state is liable." (Gov. Code, § 905.2, subd. (c)(2).) ■ Notwithstanding its prayer for declaratory relief (cf. *Otis* v. *City of Los Angeles* (1942) 52 Cal. App.2d 605, 612 [126 P.2d 954]; *Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 121 [113 Cal.Rptr. 102, 520 P.2d 726]) the cross-complaint here in essence states a claim "for money or damages," against the state, "relating to a cause of action . . . for injury to person," and hence is subject to the requirement that a claim be presented "not later than the 100th day after the accrual of the cause of action." (Gov. Code, §§ 905.2, subd. (c)(2), 911.2; cf. *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578; *Gehman* v. *Superior Court* (1979) 96 Cal.App.3d 257, 261-263 [158 Cal.Rptr. 62], disapproved as to distinct issue in *People* ex rel. *Dept. of Transportation* v. *Superior Court (Frost)* (1980) 26 Cal.3d 744, 759, fn. 5 [163 Cal.Rptr. 585, 608 P.2d 673].)

■ Shortstop and Brock dispute none of these rules. Instead they argue that they were not required to present claims because their causes of action had not yet accrued. They rely on *People* ex rel. *Dept. of Transportation* v. *Superior*

*Court* (*Frost*), *supra*. In that case, decided in 1980, the Supreme Court held that an *American Motorcycle* claim for indemnity does not accrue, in the sense necessary to start the claim period under the Tort Claims Act, until the defendant/cross-complainant "has suffered actual loss through payment," that the defendant/cross-complainant may file the cross-complaint for indemnity before (and without accelerating) the accrual of the indemnity claim, and that when the defendant/cross-complainant does so he or she need not file a Tort Claims Act claim at all. (26 Cal.3d at pp. 748, 751, 763.)

*Frost* necessarily took into account the Tort Claims Act's integral accrual statute, Government Code section 901, which at that time provided in pertinent part that "[f]or the purpose of computing the time limits prescribed by Section[ ] 911.2 . . . , the date of the accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced thereon." Effective January 1, 1982, in apparent response to the *Frost* holding (cf. Note, *Review of Selected 1981 California Legislation* (1982) 13 Pacific L.J. 513, 614), the Legislature amended section 901 by adding the following sentence: "However, the date upon which a cause of action for equitable indemnity or partial equitable indemnity accrues shall be the date upon which a defendant is served with the complaint giving rise to the defendant's claim for equitable indemnity or partial equitable indemnity against the public entity." Shortstop and Brock had both appeared generally by filing answers (cf. Code Civ. Proc., § 1014) before the effective date of the amendment, a fact of which the trial court could properly take judicial notice in support of petitioners' demurrer (Code Civ. Proc., § 430.30, subd. (a); Evid. Code, § 452, subd. (d)(1)); their appearances were equivalent to personal service on them (Code Civ. Proc., § 410.50, subd. (a)).[1] Petitioners contend that the indemnity claims accrued, for Tort Claims Act purposes, on the January 1, 1982, effective date of the amendment to section 901, and that the claim period expired 100 days later, long before Shortstop and Brock filed their cross-complaint. Hence, petitioners argue, Shortstop and Brock were obliged to plead compliance with the claims presentation requirements and their cross-complaint was vitiated by their failure to do so.

Shortstop and Brock acknowledge that they neither filed Tort Claims Act claims nor alleged in their cross-complaint that they had done so. From the premises that the amendment to section 901 could affect their indemnity claims

---

[1] Shortstop and Brock acknowledge that they both were in fact served in September 1981. The record does not make clear whether this fact would have been subject to judicial notice in support of petitioners' demurrer.

only if applied retroactively and that for want of an express declaration of retroactivity the amendment cannot be so applied, they argue that accrual of their claims is governed for Tort Claims Act purposes by preexisting law as stated in *Frost*.

Petitioners attack the first premise, asserting that a determination that the indemnity claims accrued on the effective date of the amendment to section 901, *after* Shortstop and Brock were deemed served with the complaint, would not constitute a retroactive application of the amendment. Petitioners' assertion is persuasive; we accept it. Petitioners derive support by analogy from *Olivas* v. *Weiner* (1954) 127 Cal.App.2d 597 [274 P.2d 476], a decision which dealt with statutes of limitations but stated principles of general applicability. Holding that a newly adopted shorter statute of limitations should run, as to a previously accrued cause of action, from the effective date of the new limitation, *Olivas* stated that "the Legislature may reduce a statute of limitations and . . . the new period applies to accrued causes of action provided a reasonable time is allowed within which to assert the cause. [Citations omitted.] . . . A statute is not made retroactive merely because it draws upon facts existing prior to its enactment. Thus changes in procedural law have been held applicable to existing causes of action. The effect of such statutes is actually prospective in nature since they relate to the procedure to be followed in the future." (127 Cal.App.2d at pp. 600-601; cf. also *Brown* v. *Bleiberg* (1982) 32 Cal.3d 426, 437 [186 Cal.Rptr. 228, 651 P.2d 815].)

The claim-filing periods established by the Tort Claims Act are functionally similar to limitation periods established by statutes of limitations. (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 5.6, pp. 435-436.) While here the Legislature did not shorten a limitation period, but rather declared an earlier accrual date from which the existing limitation period should run, the analogy to the situation addressed in *Olivas* is compelling. The effect of the amendment to section 901 was to require claimants to take action to implement their claims earlier than had previously been necessary. Under petitioners' proposed application of the amendment in this action the effect on Shortstop and Brock was directly analogous to the effect of the new limitation period on the plaintiff in *Olivas*. In each instance the claimant had the full applicable limitation period, running from the effective date of the amendment, within which to assert the claim. The amendment to establish a new and earlier accrual date was well within the ambit of the Legislature's acknowledged control over procedural aspects of claims against the state. (Cf. Van Alstyne, Cal. Government Tort Liability Practice, *supra,* § 5.10, pp. 440-441.) We respectfully acknowledge, but conclude that this action is not governed by, *Adler* v. *Los Angeles Unified School Dist.* (1979) 98 Cal.App.3d 280 [159 Cal.Rptr. 528], in which a Court of Appeal concluded that because a local claim-presentation rule "contains no provision purporting to make it

retroactive in effect" it could not be applied to bar an injury cause of action which had accrued nearly three months before the rule was adopted. (98 Cal.App.3d at p. 287.) *Adler* does not state facts sufficient to indicate whether that action was in relevant respects similar to this one, or why the Court of Appeal concluded it was dealing with a retroactivity issue.

Shortstop and Brock point out that as originally enacted the Tort Claims Act contained express language to the effect that preexisting claims should be deemed to have accrued on the effective date of the act. (Stats. 1963, ch. 1715, § 152(c), at p. 3424; cf. *Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468, 472 [58 Cal.Rptr. 249, 426 P.2d 753].) They argue that omission of similar language from the enactment which amended section 901 is evidence that the Legislature did not intend a similar result in this instance. We attach no such significance to the omission.

■ Alternatively Shortstop and Brock contend that even were the amendment to section 901 applicable to their indemnity claim this court should hold that accrual of the claim was postponed until they discovered the underlying facts. They assert that they did not learn the factual basis for their indemnity claim until approximately September 1, 1982, and that the 100-day claim period should run, if at all, from that date. The extension of their argument would be that since they filed their cross-complaint within the 100-day period they as a practical matter gave timely notice of their indemnity claim and should either be excused from further compliance or granted a reasonable extension of time within which to comply.

The so-called "late discovery" rules for accrual of causes of action for limitations purposes were first applied to claims, such as for fraud or for professional malpractice, which in their nature might be difficult for a claimant to discover; there has been some recent tendency to expand the circle of claims to which late discovery rules will be applied. (Cf., e.g., *Pereira* v. *Dow Chemical Co.* (1982) 129 Cal.App.3d 865, 873-874 [181 Cal.Rptr. 364]; *Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398, 406-409 [163 Cal.Rptr. 711]; cf. also 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 267, pp. 1118-1119.) We decline to declare a late discovery rule for this action for two reasons: First, the record before us contains neither allegation nor basis for inference that the asserted delay in discovering a potential claim for indemnity was reasonable or excusable. Second, the amendment to section 901 is categorical and unambiguous, leaving no room for introduction of a late-discovery exception by judicial interpretation. We note that in the indemnity situation contemplated by section 901 as amended there is little or no likelihood of the kind of innocent oversight for which late discovery rules were originally intended to compensate: The limitation period is itself triggered by service of the complaint against which indemnity would be sought and thus commences with notice which

should be sufficient to engender any necessary investigation, and a decision whether to file a Tort Claims Act claim, within the 100-day period.

■ Implicit in the arguments Shortstop and Brock have made to this court is a final contention to the effect that by granting leave to cross-complain without expressly requiring compliance with the Tort Claims Act the trial court excused them from compliance. But so far as the record shows the issue was never called to the trial court's attention at the time leave to cross-complain was sought. The Tort Claims Act contains specific and rigid provisions for the procedure by which relief from the claim presentation requirements is to be applied for (Gov. Code, § 946.6); there is no contention that this or any other relevant procedure was followed in this action.

We conclude that the 100-day claim period applicable to the *American Motorcycle* indemnity claim against petitioners in this action commenced on January 1, 1982, and that the trial court's order granting leave to cross-complain did not operate to excuse Shortstop and Brock from compliance with the claim presentation requirements of the Tort Claims Act. The demurrer should have been sustained. Without intimating an opinion as to whether facts exist which would excuse noncompliance, we believe that Shortstop and Brock should be granted a reasonable opportunity to allege such facts if they can.

Let a peremptory writ of mandate issue commanding the respondent superior court to vacate its order overruling petitioners' general demurrer to the cross-complaint and to enter a new order sustaining the demurrer and granting cross-complainants a reasonable time within which to amend.

Low, P. J., and King, J., concurred.