[No. H000984. Sixth Dist. Nov. 25, 1986.]

GREYHOUND LINES, INC., Plaintiff and Appellant, v.
COUNTY OF SANTA CLARA et al., Defendants and Respondents.

**COUNSEL**

James W. Henderson, Jr., and Carroll, Burdick & McDonough for Plaintiff and Appellant.

Kathryn K. Meier, James E. Towery, Morgan, Morgan, Towery, Morgan & Spector and Morgan & Towery for Defendants and Respondents.

**OPINION**

**AGLIANO, P. J.**—Greyhound Lines, Inc. appeals from the denial of its petition seeking relief from the time requirements for filing a governmental claim for equitable indemnity. We affirm.

The operative facts are few. MaryAnn Schroeder claims to have suffered injury due to a slip-and-fall in a Greyhound bus depot in Santa Barbara on October 22, 1982. Sometime thereafter she received medical treatment from,

among others, the Santa Clara Valley Medical Center. On October 6, 1983, she filed suit in San Francisco County Superior Court for personal injuries, with her husband joining a claim for loss of consortium. Greyhound Lines, Inc. (Greyhound) was named a defendant in that suit and was so served on October 24, 1983.

In the course of discovery in the underlying suit, Greyhound counsel arranged for an independent medical examination of plaintiff in September 1984. On October 8, 1984, the examining doctor advised counsel plaintiff's injuries had been aggravated by medical malpractice.

On January 15, 1985, Greyhound sent a letter to the director of the Santa Clara Valley Medical Center, as a health care provider, giving notice of a medical malpractice claim. (Code Civ. Proc., § 364.) This letter was referred to the County of Santa Clara, which treated it as a governmental claim and rejected it by letter dated February 8, 1985. Thus did Greyhound learn the medical center was a governmental entity. Greyhound submitted an application to file a late claim with the county dated February 15, which was rejected by the county's letter dated February 25, 1985.[1]

On April 8, 1985, Greyhound filed in Santa Clara County Superior Court its petition for relief from governmental claim requirements. It was opposed by the County of Santa Clara. After a hearing on May 30, the trial court denied Greyhound's petition "most reluctantly" by order of the same date.

A public entity cannot be sued for tort unless (1) a timely written claim has previously been presented to the governmental entity, (2) any late claim has been presented to the public entity and been excused by it or the court, or (3) conditions described by Government Code section 946.4, not applicable to this case, have been met. (Gov. Code, § 945.4; all other code citations are to the Gov. Code unless otherwise noted.) A personal injury claim must be presented within 100 days from its accrual. (§ 911.2.) If a timely claim is denied, the claimant has a specified time to commence a lawsuit. (§ 945.6.)

An application to present a late personal injury claim must be presented within a reasonable time not to exceed one year from its accrual, with an excuse for the delay. (§ 911.4.) A claimant may obtain judicial relief from the entity's denial of leave to file a late claim by filing a petition under section 946.6, as Greyhound attempted here.

---

[1]Greyhound is not now questioning its potential liability to plaintiff for the alleged successive tort of medical malpractice (cf. *Blecker* v. *Wolbart* (1985) 167 Cal.App.3d 1195, 1200-1204 [213 Cal.Rptr. 781], and cases there cited), but is seeking only to effect its right of indemnity should liability be imposed.

Since Greyhound sought to file a late claim seeking equitable indemnity from a governmental entity, we must interpret the statute governing the accrual of governmental claims, section 901, in particular its last sentence, added in 1981. (Stats. 1981, ch. 856, § 1, p. 3286.) "For the purpose of computing the time limits prescribed by Sections 911.2, 911.4, 912, and 945.6, the date of the accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced thereon. *However, the date upon which a cause of action for equitable indemnity or partial equitable indemnity accrues shall be the date upon which a defendant is served with the complaint giving rise to the defendant's claim for equitable indemnity or partial equitable indemnity against the public entity.*" (Italics added.)

■ This final sentence creates a special accrual date for pursuing equitable indemnity claims against the government. The Legislature thereby changed the rule established in *People* ex rel. *Dept. of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744 [163 Cal.Rptr. 585, 608 P.2d 673] (hereafter *Frost*). (*State of California* v. *Superior Court* (1983) 143 Cal.App.3d 754, 758 [192 Cal.Rptr. 198] (hereafter *Shortstop*).) *Frost* had integrated into the governmental claim requirements the usual rule that an indemnity claim did not accrue until the party seeking indemnity paid the underlying liability. (*Frost, supra,* 26 Cal.3d at pp. 751-755.) Also, the defendant was permitted to file an anticipatory cross-complaint for equitable indemnity against a public entity without being required to file a governmental claim on this cause of action which had not yet accrued. (*Id.,* at p. 763.)

The 1981 amendment of section 901 was applied in *Shortstop*. There the plaintiffs sued Shortstop (a corporation) and Brock (an individual) for personal injuries, property damage, and loss of consortium arising out of a collision between two trucks, one owned by Shortstop and driven by Brock. Ten months after being served with the original complaint, Brock and Shortstop obtained leave to file a cross-complaint for equitable indemnity against the State of California, alleging their liability for the collision arose because the highway patrol and a local fire district had blocked the road. The state demurred on the basis of noncompliance with the governmental claims filing requirements, and a writ petition followed when the trial court overruled the demurrer.

The appellate court first determined that the amendment to section 901 applied to the indemnity claims of Brock and Shortstop. (*Shortstop, supra,*

143 Cal.App.3d 754, 758-760.) Then the court confronted the defendants' contention that their claims had not accrued until the date they discovered the underlying facts. The court responded: "The so-called 'late discovery' rules for accrual of causes of action for limitations purposes were first applied to claims, such as for fraud or for professional malpractice, which in their nature might be difficult for a claimant to discover; there has been some recent tendency to expand the circle of claims to which late discovery rules will be applied. [Citations.] ▌ We decline to declare a late discovery rule for this action for two reasons: First, the record before us contains neither allegation nor basis for inference that the asserted delay in discovering a potential claim for indemnity was reasonable or excusable. *Second, the amendment to section 901 is categorical and unambiguous, leaving no room for introduction of a late-discovery exception by judicial interpretation.* We note that in the indemnity situation contemplated by section 901 as amended there is little or no likelihood of the kind of innocent oversight for which late discovery rules were originally intended to compensate: The limitation period is itself triggered by service of the complaint against which indemnity would be sought and thus commences with notice which should be sufficient to engender any necessary investigation, and a decision whether to file a Tort Claims Act claim, within the 100-day period." (*Id.*, pp. 760-761, italics added.)

Greyhound characterizes as dictum *Shortstop's* literal interpretation of section 901. We read it as an alternative holding. ▌ When an appellate court bases its decision on alternative grounds, none is dictum. (*King* v. *Pauly* (1911) 159 Cal. 549, 554-555 [115 P. 120].) ▌ We acknowledge we are not bound by an opinion of another District Court of Appeal, however persuasive it might be. (*Prescod* v. *Unemployment Ins. Appeals Bd.* (1976) 57 Cal.App.3d 29, 39 [127 Cal.Rptr. 540].) We respect stare decisis, however, which serves the important goals of stability in the law and predictability of decision. Thus, we ordinarily follow the decisions of other districts without good reason to disagree. (*McGlothlen* v. *Department of Motor Vehicles* (1977) 71 Cal.App.3d 1005, 1017 [140 Cal.Rptr. 168].)

The statute provides that an equitable indemnity claim against a public entity accrues when the "defendant is served with the complaint giving rise to the defendant's claim . . . ." It is possible through strained construction to find in this phrase the premise that if the complaint does not expose the facts which in turn underlie the defendant's indemnity claim, it has not accrued. However, such an interpretation would probably subvert the intent of the Legislature, which was manifestly to fix a date certain for accrual of equitable indemnity claims against the government for purposes of claims filing requirements. It would introduce uncertainty to require close analysis

of the facts of the complaint to determine whether it contained the predicate of the equitable indemnity claim. This is clearly not what this phrase means.

Greyhound argues with some force that the discovery rule has from the seminal medical malpractice case of *Huysman* v. *Kirsch* (1936) 6 Cal.2d 302, 312-313 [57 P.2d 908], on, been judicially engrafted onto statutes which did not, at first, specifically provide for it. *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 186-187 [98 Cal.Rptr. 837, 491 P.2d 421], catalogues cases in which the discovery rule has been applied without exception to delay accrual of causes of action for professional malpractice. More particularly, the discovery rule has been observed for purposes of filing a governmental claim for medical injury. (*Wozniak* v. *Peninsula Hospital* (1969) 1 Cal.App.3d 716, 722-723 [82 Cal.Rptr. 84]; *Whitfield* v. *Roth* (1974) 10 Cal.3d 874, 885 [112 Cal.Rptr. 540, 519 P.2d 588].)

In most, if not all, of these cases, the Legislature did not expressly provide a limitations period tailored to one particular cause of action. (E.g., the legal malpractice statute, Code Civ. Proc., § 340.6.) Such specialized statutes have proliferated more in the last decade. The applicable limitations period for most of these professional malpractice cases was originally determined by judicial construction of general statutes, and so judicial interpolation of delayed accrual could not be said to offend legislative intent.

Moreover, we observe that delayed accrual by lack of discovery has only been applied in favor of the injured party against the tortfeasor, and a plaintiff filing suit against a governmental entity for medical injury still has this advantage under the first sentence of section 901. The amendment to this statute precludes a possible concurrent tortfeasor from gaining the same advantage.

Greyhound argues the fairness of applying the discovery rule in a case such as this, borrowing some of the reasoning which has justified its judicial establishment. Here the slip-and-fall negligence complaint contained no facts indicating medical malpractice. If Greyhound has only 100 days to file equitable indemnity claims, it must conduct discovery as quickly as the law allows on all possible claims against public entities. An independent medical examination must be immediately pursued to determine the viability of a medical malpractice claim. Often medical malpractice does not become manifest within such a short period of time. Additionally, the public entity nature of a potential cross-defendant may not be readily apparent.

These concerns are certainly legitimate. However, the Legislature, aware, as it must have been of the discovery problem (e.g., Code Civ. Proc.,

§§ 340.2, 340.5, 340.6), presumably considered them in amending section 901 to fix an accrual date for all equitable indemnity claims.

■ Our judicial role in interpretation of this statute is simply to ascertain the intent of the Legislature (Code Civ. Proc., § 1859; *The State* v. *Conkling* (1861) 19 Cal. 501, 511; *Sher* v. *Leiderman* (1986) 181 Cal.App.3d 867, 881 [226 Cal.Rptr. 698]), "not to insert what has been omitted, or to omit what has been inserted." (Code Civ. Proc., § 1858.) "The judiciary has no power to rewrite plain statutory language" under the guise of construction. (*Hyland Therapeutics* v. *Superior Court* (1985) 175 Cal.App.3d 509, 514 [220 Cal.Rptr. 590].) When the meaning is plain, we apply it. (*Ibid.*; *Swanson* v. *Matthews Products, Inc.* (1985) 175 Cal.App.3d 901, 907-908 [221 Cal.Rptr. 84].) We are unpersuaded by Greyhound's alternative contentions, either that a lack of legislative expression on the discovery rule in the final sentence of this statute signifies nothing and throws the question open for judicial construction, or that the Legislature intended the common-law discovery rule to be incorporated.

It is important to recall the statute was amended in response to *Frost, supra,* 26 Cal.3d 744. While that decision did not discuss the discovery rule, it did effectively recognize a delayed accrual date for equitable indemnity claims against governmental entities. The Legislature changed this rule, clearly fixing an earlier specific accrual date for such claims.

It may reasonably be assumed the Legislature chose this accrual date for some of the same reasons given by the court in *Gehman* v. *Superior Court* (1979) 96 Cal.App.3d 257 [158 Cal.Rptr. 62] (disapproved in *Frost, supra,* 26 Cal.3d 744, 759; fn. 5), in reaching the same conclusion. It comports with the purposes of the claim requirements. "The two purposes of the claims procedure are succinctly stated by the California Law Revision Commission: '"First, they give the governmental entity an opportunity to settle just claims before suit is brought. Second, they permit the entity to make an early investigation of the facts on which a claim is based, thus enabling it to defend itself against unjust claims and to correct the conditions or practices which gave rise to the claim."'" (*Id.,* at p. 262.) Also, this "solution avoids multiple suits arising out of the same transaction or occurrence and thus furthers the goal of judicial economy." (*Id.,* at p. 265.)

Further, as respondent points out, the Draconian nature of the 100-day rule is ameliorated by the one-year period available to apply to the public entity to file a late claim. (§§ 911.4, 946.6.) A failure to discover an equitable indemnity claim within 100 days may well be found excusable. Greyhound's problem is not simply that 100 days elapsed since it was served with plain-

tiffs' complaint, but that more than one year elapsed before it sought to present a governmental claim for indemnity.

■ When the underlying application to file a late claim is filed more than one year after accrual of the cause of action, the court is without jurisdiction to grant relief under section 946.6. (*Hom* v. *Chico Unified Sch. Dist.* (1967) 254 Cal.App.2d 335, 339 [61 Cal.Rptr. 920]; cf. *Moyer* v. *Hook* (1970) 10 Cal.App.3d 491, 492-493 [89 Cal.Rptr. 234]; *Carr* v. *State of California* (1976) 58 Cal.App.3d 139, 144-146 [129 Cal.Rptr. 730]; *Williams* v. *Mariposa County Unified Sch. Dist.* (1978) 82 Cal.App.3d 843, 848-849 [147 Cal.Rptr. 452].)

The judgment is affirmed.

Brauer, J., and Bonney, J.,* concurred.

**BRAUER, J.,** Concurring—I join in the decision and the opinion of the court. I write separately to point out that the 1981 amendment to section 901 of the Government Code works an injustice to a defendant who when served with a complaint does not know and has no reason to anticipate that a public entity also contributed to a plaintiff's harm.

Appellant urges us in effect to amend an unambiguous statute. I am just as disinclined as my brothers are to exceed our proper role. I hope however that this opinion will be drawn to the attention of the branch of government whose constitutional function it is to make law.

Appellant's petition for review by the Supreme Court was denied February 11, 1987.

---

*Assigned by the Chairperson of the Judicial Council.