[No. D062995. Fourth Dist., Div. One. Mar. 25, 2013.]

CENTEX HOMES et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
CITY OF SAN DIEGO, Real Party in Interest.

1092

COUNSEL

Newmeyer & Dillion, Jon Nathan Owens and Philip David Kopp for Petitioners.

No appearance for Respondent.

Jan I. Goldsmith, City Attorney, Christine Marie Leone, Chief Deputy City Attorney, and Andrew Jones, Deputy City Attorney, for Real Party in Interest.

**OPINION**

**AARON, J.—**

## I.

## INTRODUCTION

Government Code section 901[1] provides in relevant part, "[T]he date upon which a cause of action for equitable indemnity or partial equitable indemnity accrues shall be the date upon which a defendant is served with *the complaint giving rise to the defendant's claim for equitable indemnity* or partial equitable indemnity against the public entity." (Italics added.)

In this case, we must determine whether the trial court properly concluded that a homeowners association's original complaint against Centex Homes (Centex)[2] alleging violations of various statutory building standards (Civ. Code, § 896) related to Centex's construction of a multistory residential building, gave rise to Centex's claim for equitable indemnity against the City of San Diego (City). We conclude that because the original complaint did not encompass the claim for which Centex seeks indemnity from the City, Centex's claim for equitable indemnity did not accrue with the filing of the original complaint. We reverse and remand for further proceedings.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The underlying lawsuit against Centex*

On April 20, 2009, the Element Owners Association (Association) filed a complaint against Centex related to Centex's construction of an eight-story condominium building in San Diego (the Project). The complaint contained a cause of action alleging violations of various statutory building standards (Civ.

---

[1] Unless otherwise specified, all subsequent statutory references are to the Government Code.

[2] The complaint also named as defendants various entities related to Centex Homes. Because the identities of these defendants are not material to this writ proceeding, we refer to Centex Homes and its related entities collectively as Centex.

Code, § 896), including violations pertaining to the Project's foundation, exterior walls, balconies, exterior decks, common walkways, fire safety systems, windows and doors, and a handicap lift. None of the alleged violations related to the building's plumbing or sewer systems.[3]

On April 1, 2011, the Association sent Centex a "notice of commencement of a legal proceeding" pursuant to Civil Code section 910. "[Civil Code] section 910 . . . establishes a series of prelitigation procedures that a claimant must pursue before filing an action against 'any party alleged to have contributed to a violation of [a] standard[]' [outlined in Civil Code section 896]" (*Greystone Homes, Inc. v. Midtec, Inc.* (2008) 168 Cal.App.4th 1194, 1211 [86 Cal.Rptr.3d 196] (*Greystone*)), including notifying the party of the claimed violations of the standards contained in Civil Code section 896 prior to commencing litigation. In the April 1, 2011 notice, the Association identified various alleged defects in the Project's plumbing and sewer systems.

That same day, the Association filed a document entitled "Plaintiff's Preliminary Statement of Claim." This document states that it was being filed pursuant to the "operative CMO"[4] and that it "illustrate[s] and support[s] [the Association's] claims arising out of alleged defects and damages alleged in [the Association's] complaint . . . ." Among the defects alleged in the preliminary statement of claim are defects related to the Project's plumbing and sewer systems, including an allegation that the "cast iron waste piping is defective and has leaked."

### B. *Centex presents a claim to the City*

In March 2012, Centex presented the City with a claim pursuant to section 900 et seq. The claim referenced the Association's April 2011 preliminary statement of claim and stated that this document represented the first time that the Association had alleged that the Project's cast iron waste piping was defective. Centex also stated that an inspection of the pipes conducted in February 2012 revealed crystallization on the pipes, and contended that further investigation had revealed that the crystallization was the result of hydrochloric gasses emitting from the City's sewer system. Centex asserted that this was the first time that it had discovered "the grounds for Centex['s] claimed relief against the [City]."

---

[3] In June 2010, the Association filed a first amended complaint, which named several additional defendants. However, none of the alleged violations in the first amended complaint relate to the Project's plumbing or sewer systems.

[4] We assume that this acronym refers to the "case management order."

In May 2012, the City denied Centex's claim on the ground that the claim had not been "presented within the 6 (six) months after the event or occurrence as required by law."[5]

## C. *Centex's motion for relief from the Government Code claims requirement and for leave to file a cross-complaint against the City*

In August 2012, Centex filed a motion for relief from the Government Code claims requirement and for leave to file a cross-complaint against the City. In its motion, Centex noted that "[a] cause of action for equitable indemnity . . . accrues on the date on which a defendant is served with the complaint giving rise to the Defendant's claim for equitable indemnity . . . against the public entity." (See § 901.) Centex argued that it had presented its claim to the City on March 28, 2012, which was within one year of the accrual of its equitable indemnity cause of action against the City on April 1, 2011. Centex reasoned: "[The Association's] original complaint was filed on April 20, 2009. That complaint, however, did not contain any allegation of defects or damage to any part of the plumbing system in general, or the cast iron waste lines specifically. [Citation.] On April 1, 2011, [the Association] served a Preliminary Statement of Claim [citation] alleging, for the first time, plumbing defects in the Project, including defective and leaking cast iron waste pipes. [Citation.] Since a Notice of Claim has the same effect as the commencement of a lawsuit, [Centex's] cause of action against the City did not begin to accrue until April 1, 2011. [Citation.] Thus, the deadline for making a claim against the City was April 1, 2012."

Centex further argued that its cross-complaint against the City was timely under section 945.6, which required Centex to commence its suit against the City within six months of the presentation of its claim to the City.

With respect to the nature of its proposed cross-complaint against the City, Centex argued that its "claim asserted against the City arises out of the same transactions and occurrences currently being pursued by [the Association] against [Centex]." More specifically, Centex maintained that the Association

---

[5] Section 911.2, subdivision (a) provides, "(a) A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) not later than six months after the accrual of the cause of action. A claim relating to any other cause of action shall be presented as provided in Article 2 (commencing with Section 915) not later than one year after the accrual of the cause of action."

As noted in the text, in denying Centex's claim, the City stated that the six-month limitation period contained in section 911.2, subdivision (a) that applies to claims "for death or for injury to person or to personal property or growing crops" applied to Centex's claim. However, in the trial court and in this court, the City has acknowledged that in fact, the one-year limitation contained in section 911.2, subdivision (a) applies to Centex's claim.

was alleging "premature deterioration in the [Project's] cast iron pipes," and that "[t]esting to date indicates that the deterioration, if any, is the result of hydrochloric gas improperly emitting from the City's sewer system."

Centex supported its motion with a declaration from its counsel and various exhibits, including its proposed cross-complaint, the Association's April 2011 preliminary statement of claim, and documents related to Centex's March 2012 claim presented to the City.

In its proposed cross-complaint, Centex included the following allegation: "On or about April 20, 2009, [the Association] filed their Complaint against [Centex] for, among other things, violation of building standards as set forth in California Civil Code, [section] 896, breach of warranty and negligence in connection with the condominium and commercial mid-rise project known as "Element" . . . ("the Property"). This cross-complaint pertains to the alleged defects and damage in the Property, specifically claims related to the cast-iron waste line."[6]

Centex's proposed cross-complaint contained causes of action for equitable indemnification, contribution and repayment, and declaratory relief as to the City's duty to indemnify.

The City filed an opposition in which it argued that section 901 provides that Centex's equitable indemnity claim against the City accrued upon the Association's service of the original April 20, 2009 complaint on Centex. The City noted that in *Greyhound Lines, Inc. v. County of Santa Clara* (1986) 187 Cal.App.3d 480, 485 [231 Cal.Rptr. 702] (*Greyhound*), the court rejected a defendant's argument that its claim for equitable indemnity had not accrued against a public entity until the time the defendant discovered the underlying facts giving rise to the indemnity claim. The City reasoned that under *Greyhound*, the Association's original April 2009 complaint gave rise to Centex's equitable indemnity claim against the City, even if Centex did not discover the City's potential liability until much later.

Based on its contention that the filing of the original complaint in April 2009 "gave rise" to Centex's equitable indemnity claim, the City maintained that Centex's claim accrued no later than June 20, 2009. The City reasoned that although it was unaware of the precise date on which the Association served Centex with the April 20, 2009 complaint, even assuming that the Association waited the maximum 60 days after the filing of the complaint to serve Centex (Cal. Rules of Court, rule 3.110), Centex's claim accrued no

---

[6] Centex did not specifically allege that the Association's April 2009 complaint contained a claim related to the Project's cast iron waste line.

later than June 20, 2009. Because Centex was required to present its claim to the City no later than one year after accrual of its equitable indemnity cause of action (§ 911.2, subd. (a)), the City argued that Centex would have had to present its claim to the City no later than June 20, 2010. The City further argued that since Centex did not present its claim to the City until March 28, 2012, Centex had failed to timely present its claim to the City.

Centex filed a reply in which it argued that the Association's original April 20, 2009 complaint did not contain a "single allegation relating to plumbing or cast iron waste pipes," and that given this fact, "the complaint does not, in any conceivable way, give rise to [Centex's] claim for equitable indemnity against the City." (Italics omitted.)

The trial court issued a tentative ruling denying Centex's motion and held oral argument on the motion. At the conclusion of oral argument, the court confirmed its tentative ruling, as follows:

"A cause of action for equitable indemnity or partial equitable indemnity against a public entity begins to accrue once a defendant has been served with the complaint giving rise to the defendant's claim for equitable indemnity or partial equitable indemnity. ([Section 901].) [Section] 901 is to be strictly construed even where a defendant does not have any reason to anticipate that a government entity has contributed to a plaintiff's harm. (*Greyhound*[, *supra*, 187 Cal.App.3d at p. 488].)

"Here, the Complaint giving rise to [Centex's] claims for equitable indemnity or partial equitable indemnity was filed on April 20, 2009. Defendants had one year from this date to file an equitable indemnity claim. [Centex] filed [its] claims for equitable indemnity [on] March 28, 2012. Thus, the statute of limitations expired prior to [Centex] filing [its] claims for equitable indemnity."

D. *The Association's second amended complaint*

In October 2012, the Association served Centex with a second amended complaint. In that complaint, the Association alleged that Centex violated the statutory building standard related to plumbing and sewer issues (Civ. Code, § 896, subd. (e)) by providing "defective cast iron waste piping" to the Project.[7]

---

[7] Centex failed to lodge either the first amended complaint (see fn. 3, *ante*) or the second amended complaint with its petition. In fact, Centex failed to mention the existence of either document in its writ petition.

On our own motion, we order the record on appeal augmented with the first amended complaint and the second amended complaint. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

E.  *Writ proceedings in this court*

In November 2012, Centex filed a petition for writ of mandate in this court, requesting that we direct the trial court to vacate its September 21, 2012 order and to instead grant Centex's motion for relief from the Government Code claims requirement and for leave to file a cross-complaint against the City. Centex also requested that this court issue a stay of all further proceedings in the underlying action. Pursuant to this court's request, the City filed an informal response to Centex's petition.

On December 11, 2012, this court issued an order to show cause (OSC) on Centex's writ petition. In our OSC, we stayed the trial of the matter pending further order of this court.[8] The City subsequently filed a return and Centex filed a reply.

III.

DISCUSSION

*The trial court erred in concluding that the April 20, 2009 complaint gave rise to Centex's claim for equitable indemnity against the City*

Centex claims that the trial court erred in concluding that the Association's April 2009 complaint gave rise to Centex's claim for equitable indemnity against the City, and in denying Centex's motion for relief from the Government Code claims requirement and for leave to file a cross-complaint against the City on that basis.

A.  *The meaning of the provision in section 901 that an equitable indemnity cause of action against a public entity accrues upon the service of a complaint "giving rise" to the defendant's claim for equitable indemnity*

In order to determine whether Centex's equitable indemnity cause of action against the City accrued with the service of the Association's April 2009 complaint, we must interpret section 901.

---

Centex's failure to inform this court of the existence of the second amended complaint wasted judicial resources and needlessly complicated our resolution of the case.

[8] In its motion in the trial court, Centex stated that trial of the underlying action was scheduled to commence on October 19, 2012.

### 1. Section 901

Section 901 provides: "For the purpose of computing the time limits prescribed by Section[] 911.2[9] . . . the date of the accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced thereon. *However, the date upon which a cause of action for equitable indemnity or partial equitable indemnity accrues shall be the date upon which a defendant is served with the complaint giving rise to the defendant's claim for equitable indemnity or partial equitable indemnity against the public entity.*" (Italics added.)

### 2. Principles of statutory interpretation

In *Doe v. Brown* (2009) 177 Cal.App.4th 408, 417 [99 Cal.Rptr.3d 209], this court outlined the following well-established principles of statutory interpretation: " 'In construing any statute, "[w]ell-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." [Citation.] "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." [Citation.] If the statutory language is unambiguous, "we presume the Legislature meant what it said, and the plain meaning of the statute governs." [Citation.]' [Citation.]"

### 3. The nature of an equitable indemnity cause of action

"A key restrictive feature of traditional equitable indemnity is that, on matters of substantive law, the doctrine is 'wholly derivative . . .' . . . . [Citations.] This rule 'is often expressed in the shorthand phrase ". . . there can be no indemnity without liability." ' [Citation.]" (*Prince v. Pacific Gas & Electric Co.* (2009) 45 Cal.4th 1151, 1158–1159 [90 Cal.Rptr.3d 732, 202 P.3d 1115], fn. omitted; accord, *Greystone, supra*, 168 Cal.App.4th at p. 1218 ["A derivative equitable indemnity action is based on an indemnitee's joint legal obligation with an indemnitor to a third party . . . ."].)

In *Greystone*, this court explained that a defendant to a claim based on an alleged violation of the building standards contained in Civil Code

---

[9] As noted previously (see fn. 5, *ante*), as applicable to this case, section 911.2, subdivision (a) requires that a party present its claim to a public entity "not later than one year after the accrual of the cause of action."

section 896 may bring a derivative equitable indemnification action against a third party alleging that the third party is partially or wholly responsible for the plaintiff's losses. (See *Greystone, supra,* 168 Cal.App.4th at p. 1219 [explaining that builder (Greystone) could bring derivative equitable indemnity claim against product manufacturer seeking apportionment of homeowners' claims arising under Civ. Code, § 896, and stating, "Greystone's derivative equitable indemnity claim is premised on the homeowners' losses."].)

### 4. *Relevant case law*

In *People ex rel. Dept. of Transportation v. Superior Court* (1980) 26 Cal.3d 744 [163 Cal.Rptr. 585, 608 P.2d 673] (*Frost*), the Supreme Court applied a former version of section 901 and held that a cause of action for equitable indemnity against a public entity does not accrue until the defendant/cross-complainant "has suffered actual loss through payment . . . ." (*Frost, supra,* at p. 751, italics omitted.) In response to the *Frost* decision, in 1981, the Legislature amended section 901 to add the final sentence of the statute, which establishes a specific date for the accrual of equitable indemnity causes of action against public entities. (§ 901 ["[T]he date upon which a cause of action for equitable indemnity . . . accrues shall be the date upon which a defendant is served with the complaint giving rise to the defendant's claim for equitable indemnity . . . against the public entity."].)

In *State of California v. Superior Court* (1983) 143 Cal.App.3d 754, 758 [192 Cal.Rptr. 198] (*Shortstop*), the court interpreted the 1981 amendment to section 901 and rejected a defendant's request to apply "so-called 'late discovery' rules" that would have had the effect of delaying the accrual of the defendant's equitable indemnity cause of action against a public entity until the defendant reasonably should have discovered the factual basis for its indemnity claim. (*Shortstop, supra,* 143 Cal.App.3d at p. 760.) In rejecting the defendant's request, the *Shortstop* court noted that the accrual of an equitable indemnity cause of action against a public entity does not occur until "service of the complaint *against which indemnity would be sought*" (*ibid.,* italics added), which, the *Shortstop* court reasoned, "should be sufficient to engender any necessary investigation, and a decision whether to file a Tort Claims Act claim . . . ." (*Id.* at p. 761; see *Greyhound, supra,* 187 Cal.App.3d at p. 485, quoting *Shortstop, supra,* at pp. 760–761 [declining to apply discovery rule so as to permit defendant to file equitable indemnity claim against public entity and stating, " '[t]he limitation period is itself triggered by service of the complaint against which indemnity would be sought . . .' "].)

5. *A defendant's equitable indemnity cause of action against a public entity accrues upon the service of the complaint for which indemnity is sought*

As noted above, section 901 provides that a defendant's equitable indemnity cause of action accrues when the "defendant is served with the complaint *giving rise* to the defendant's claim for equitable indemnity . . . ." (Italics added.)

■ We agree with the courts in *Shortstop* and *Greyhound* that the plain language of section 901 provides that a defendant's equitable indemnity cause of action against a public entity accrues upon the service of the complaint that contains the cause of action for which indemnity is sought. (*Shortstop, supra,* 143 Cal.App.3d at p. 760; *Greyhound, supra,* 187 Cal.App.3d at p. 485.)

B. *The Association's April 2009 complaint did not give rise to Centex's claim for equitable indemnity against the City based on a violation of Civil Code section 896's plumbing and sewer standard*

The next issue that we must address is whether Centex's proposed cross-complaint seeks indemnity from the City for a claim contained in the Association's 2009 complaint.

1. *Governing law*

   a. *Civil Code section 896*

Civil Code section 896 establishes a set of standards for residential construction, and provides tort liability for entities that fail to meet those standards. (Civ. Code, § 896 ["In any action seeking recovery of damages arising out of, or related to deficiencies in, the residential construction . . . a builder . . . shall, except as specifically set forth in this title, be liable for, and the claimant's claims or causes of action shall be limited to violation of, the following standards, except as specifically set forth in this title."].) The standards cover numerous aspects of residential construction, including "water issues" (Civ. Code, § 896, subd. (a)), "structural issues" (Civ. Code, § 896, subd. (b)), "soil issues" (Civ. Code, § 896, subd. (c)), "fire protection issues" (Civ. Code, § 896, subd. (d)), "plumbing and sewer issues" (Civ. Code, § 896, subd. (e)), and "electrical system issues" (Civ. Code, § 896, subd. (f)).

With respect to each identified aspect of residential construction, Civil Code section 896 provides specified building standards. For example, with respect to "plumbing and sewer issues," the statute provides in relevant part:

"Plumbing and sewer systems shall be installed to operate properly and shall not materially impair the use of the structure by its inhabitants. . . ." (Civ. Code, § 896, subd. (e).)

### b. *The function of a complaint in a civil action*

█ Generally speaking, "[t]he complaint in a civil action serves a variety of purposes [citation], of which two are relevant here: it serves to frame and limit the issues [citation] and to apprise the defendant of the basis upon which the plaintiff is seeking recovery [citations]. In fulfilling this function, the complaint should set forth the ultimate facts constituting the cause of action, not the evidence by which plaintiff proposes to prove those facts." (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211–212 [197 Cal.Rptr. 783, 673 P.2d 660].)

By framing and limiting the issues, the complaint limits the bases upon which a plaintiff may seek to impose liability on a defendant. (See, e.g., *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1257 [78 Cal.Rptr.3d 372] ["[I]f a plaintiff wishes to introduce issues not encompassed in the original pleadings, the plaintiff must seek leave to amend the complaint at or prior to the hearing on the motion for summary judgment."]; *Schweitzer v. Westminster Investments, Inc.* (2007) 157 Cal.App.4th 1195, 1214 [69 Cal.Rptr.3d 472] ["The complaint specifically alleged the contract was 'in violation of Civil Code §§ 1695.2, 1695.3, 1695.5, 1695.6, 1695.13, and 1695.17.' Because there was no allegation the contract violated section 1695.16, any evidence on that issue was outside of the scope of the complaint and was properly excluded."].)

### 2. *Application*

In its proposed cross-complaint, Centex states that the Association filed a complaint against it "for, among other things, violation of building standards as set forth in . . . Civil Code, [section] 896 . . . ." Centex further states that it seeks indemnity from the City for "claims related to the [Project's] cast iron waste line." Reasonably construed, Centex's equitable indemnity claim seeks to apportion potential liability for a violation of Civil Code section 896, subdivision (e).

The Association's April 2009 complaint alleges numerous defects in the Project that could be construed as constituting alleged violations of various building standards contained in Civil Code section 896. However, the Association's April 2009 complaint does not contain any allegations related to defects in the Project's cast iron waste line. In fact, the April 2009 complaint does not allege *any* defects that could be construed as constituting violations

of the building standard related more generally to the plumbing or sewer standards contained in Civil Code section 896, subdivision (e). Thus, the April 2009 complaint does not set forth any basis upon which Centex could be found liable for a violation of Civil Code section 896, subdivision (e).[10] (See *Committee on Children's Television, Inc. v. General Foods Corp., supra*, 35 Cal.3d at pp. 211–212.)

■ Because there is no allegation in the Association's April 2009 complaint pertaining to plumbing or sewer standards, that complaint does not give rise to Centex's equitable indemnity claim seeking to apportion potential liability for a violation of Civil Code section 896, subdivision (e).

C. *The City's contention that all possible equitable indemnity claims against a public entity necessarily accrue upon the service of the original complaint in an action is untenable*

The City argues that "any indemnity action against a public entity . . . accrue[s] upon service of the *original* complaint in the underlying action in which the defendant seeks indemnity." (Italics added.) We are not persuaded.

■ Most fundamentally, the City's interpretation conflicts with the plain language of section 901. Rather than providing for accrual upon the service of the "*original* complaint" as stated by the City, section 901 triggers accrual upon the service of the complaint *giving rise to* a claim for equitable indemnity.[11]

Further, as noted previously, an equitable indemnity action is premised on the indemnitee's and indemnitor's joint legal obligation to the plaintiff. (See *Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 114 [32 Cal.Rptr.2d 263, 876 P.2d 1062] [equitable indemnity action "is premised on a joint legal obligation to another for damages"].) The Legislature's decision to have an equitable indemnity cause of action accrue

---

[10] It is apparently undisputed that Centex is not seeking to be indemnified for a claim contained in the Association's 2009 complaint. Rather, the City argues that *all* equitable indemnity claims that Centex could possibly bring in this action arose with the filing of the Association's *original* complaint, irrespective of the nature of claims contained in the Association's original complaint or the nature of the claims in Centex's proposed cross-complaint for equitable indemnity. We address the City's argument in part III.C., *post*.

[11] We are similarly unpersuaded by the City's observation that section 901 refers to "the complaint," and does not expressly refer to complaints other than the original complaint in an action, such as amended complaints or supplemental complaints. Amended complaints and supplemental complaints are *types* of complaints. Section 901's reference to "the complaint giving rise to the defendant's claim for equitable indemnity" plainly encompasses such pleadings.

upon service of a complaint *giving rise* to that equitable indemnity claim is entirely consistent with this joint liability aspect of an equitable indemnity claim.

It would make little sense to trigger the accrual of an equitable indemnity claim based upon the service of a complaint that does *not* contain the claim for which the defendant seeks to apportion joint liability. Indeed, if section 901 were interpreted in this fashion, as the City argues it should be, numerous absurd consequences could result. For example, consider a lawsuit in which a plaintiff files a complaint against "Defendant X." Two years after service of the original complaint, the plaintiff files and serves an amended complaint against "Defendant Y." Within one year of service of the amended complaint, Defendant Y seeks to file an equitable indemnity claim against a public entity to apportion potential liability sought against Defendant Y in the amended complaint. Under the City's interpretation of section 901, Defendant Y's equitable indemnity claim would be barred since Defendant Y's equitable indemnity claim accrued upon the service of the *original* complaint—before Defendant Y was even a party to the lawsuit. The Legislature avoided such absurd results by providing that Defendant Y's equitable indemnity claim would accrue upon service of the amended complaint, since that is the complaint "giving rise" (§ 901) to Defendant Y's equitable indemnity claim.

The City's contention that "any indemnity action against a public entity . . . accrue[s] upon service of the original complaint in the underlying action in which the defendant seeks indemnity" is based primarily on a misapplication of *Greyhound, supra*, 187 Cal.App.3d 480. In *Greyhound*, the plaintiff served a complaint against Greyhound Lines, Inc. (Greyhound), that contained a negligence cause of action (*id.* at p. 486) in which the plaintiff sought to recover "for personal injuries" that the plaintiff suffered in a "slip-and-fall" at a Greyhound bus depot (*id.* at pp. 482–483). In the course of discovery, Greyhound learned that the plaintiff's injury may have been aggravated by medical malpractice committed by a doctor employed by a governmental entity. (*Id.* at p. 483.) Since Greyhound learned of the factual basis for its equitable indemnity claim against the governmental entity only after the statutory time to present its claim to the entity had expired, Greyhound filed a petition in the trial court seeking relief from the governmental claims requirements. (*Ibid.*)[12] The trial court denied the petition. (187 Cal.App.3d at p. 483.)

---

[12] At the time of the *Greyhound* decision, "[a] personal injury claim [had to] be presented within 100 days from its accrual" (*Greyhound, supra*, 187 Cal.App.3d at p. 483), and an application to present a late personal injury claim had to be presented within one year of the accrual of the claim (*ibid.*).

On appeal, in determining when Greyhound's equitable indemnity cause of action against the governmental entity accrued, thereby triggering the limitation period for presenting a claim to the governmental entity, the *Greyhound* court began its analysis by recounting the history of the 1981 amendment to section 901 discussed above (*Greyhound, supra,* 187 Cal.App.3d at p. 484), and continued its analysis by quoting the *Shortstop* court's reasoning for refusing to apply a "late-discovery exception" (*Greyhound, supra,* at p. 485, italics omitted) to the 1981 amendment: " '[T]he amendment to section 901 is categorical and unambiguous, leaving no room for introduction of a late-discovery exception by judicial interpretation. We note that in the indemnity situation contemplated by section 901 as amended there is little or no likelihood of the kind of innocent oversight for which late discovery rules were originally intended to compensate: The limitation period is itself triggered by service of the complaint against which indemnity would be sought and thus commences with notice which should be sufficient to engender any necessary investigation, and a decision whether to file a Tort Claims Act claim . . . .' " (*Ibid.,* italics omitted, quoting *Shortstop, supra,* 143 Cal.App.3d at pp. 760–761.)

After rejecting Greyhound's request to apply the late-discovery exception to section 901, the *Greyhound* court concluded that because Greyhound had waited "more than one year" after the accrual of its equitable indemnity claim to present its claim to the governmental entity, the trial court had properly denied its petition for relief from the claims presentation requirement. (*Greyhound, supra,* 187 Cal.App.3d at p. 488.)

*Greyhound* is plainly distinguishable from the present case. In *Greyhound,* the equitable indemnity claim had undisputedly accrued upon the service of the plaintiff's complaint against the defendant. The legal issue before the Court of Appeal was whether the late discovery rule should apply to *delay* the period within which the defendant was required to present a claim for equitable indemnity to a governmental entity. More specifically, in *Greyhound,* the injured plaintiff's original negligence complaint gave rise to Greyhound's equitable indemnity cause of action against the governmental entity because Greyhound sought to apportion a loss arising from that complaint. (See *Greyhound, supra,* 187 Cal.App.3d at p. 485 [". . . The limitation period is . . . triggered by service of the complaint against which indemnity would be sought . . . ."].) Indeed, by stating "Greyhound is not now questioning its potential liability to plaintiff for the alleged successive tort of medical malpractice [citation], *but is seeking only to effect its right of indemnity should liability be imposed*" (*Greyhound, supra,* at p. 483, fn. 1, italics added), the *Greyhound* court made clear that Greyhound was not contesting that it was seeking indemnity for a claim that was contained in the plaintiff's original complaint.

In this case, in contrast, we must determine the issue that was undisputed in *Greyhound*, namely, whether the plaintiff's original complaint contains a claim for which the defendant seeks equitable indemnity from a third party. Contrary to the City's reading, *Greyhound* does not stand for the proposition that the plaintiff's service of a complaint triggers the accrual of an equitable claim that, as in this case, seeks to apportion the potential liability stemming from a claim that is *not* pled in the plaintiff's complaint. Further, in rejecting Greyhound's request to apply the late-discovery rule, the *Greyhound* court expressly relied on the fact that the limitation period for bringing an equitable indemnity claim against a governmental entity accrues upon "service of the complaint against which indemnity would be sought." (*Greyhound, supra,* 187 Cal.App.3d at p. 485.) Thus, far from supporting the City's contention that any potential equitable indemnity action against a public entity—even one based on a claim that is not pled in the original complaint—accrues upon service of the original complaint in the underlying action, *Greyhound* is fully consistent with our conclusion that a defendant's equitable indemnity claim against a governmental entity accrues only upon service of the complaint as to which indemnity is sought.

We also reject the City's contention that we should adopt its interpretation of section 901 in light of the legislative history of the 1981 amendment to the statute.[13] The City cites several quotations from the legislative history of this statute in which participants in the legislative process imprecisely summarized the 1981 amendment as providing that an equitable indemnity cause of action accrues upon the service of the original complaint in the action. (See, e.g., Assem. Com. on Judiciary, Analysis of Assem. Bill No. 601 (1981–1982 Reg. Sess.) May 13, 1981, p. 4 (Analysis) ["Since the time for filing an equitable indemnity claim would begin to run on the date of the service of the original complaint on the defendant, the public entity would have sufficient notice to enter into the underlying tort action."].)

■   To begin with, "we ordinarily will not invoke legislative history to justify interpreting a statute contrary to its plain language." (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 215 [64 Cal.Rptr.3d 210, 164 P.3d 630].) As noted previously, section 901 provides that a defendant's equitable indemnity action accrues with the service of a complaint "giving rise to the defendant's claim for equitable indemnity," *not* upon the service of the *original* complaint in the action. Further, none of the passages from the legislative history that the City quotes suggests that the plaintiff's service of a complaint triggers the accrual of a defendant's equitable indemnity claim premised on a claim that is not pled in the complaint, as the City's interpretation of section 901 would require. In addition, numerous other

---

[13] We grant the City's unopposed request to take judicial notice of the legislative history of the 1981 amendment to section 901.

portions of the legislative history, including some of the same reports upon which the City relies, track the statutory language and state that an equitable indemnity cause of action against a public entity accrues from the service of the complaint "giving rise to the defendant's claim for indemnity." (See, e.g., Analysis, *supra*, p. 1.) Under these circumstances, we decline to accord the imprecise summaries of pending legislation cited by the City greater interpretative weight than the plain text of the adopted statute. (See *Doe v. Brown*, *supra*, 177 Cal.App.4th at pp. 417–418 [words of a statute are the most reliable indicator of the Legislature's intent].)

In sum, we agree with Centex that there is nothing in section 901 that suggests that the Legislature intended for the service of a complaint to cause the accrual of an equitable indemnity claim seeking to apportion potential liability of a claim that is not pled in the complaint. Accordingly, the trial court erred in concluding that the Association's April 2009 complaint gave rise to the claim for equitable indemnity contained in Centex's proposed cross-complaint.

## D. *Proceedings on remand*

For the guidance of the trial court and the parties, we explain the manner by which proceedings are to be conducted on remand. In doing so, we must first address Centex's contention that its equitable indemnity claim against the City accrued upon the Association's April 2011 service of a notice of claim under section 910.

Centex argued in both the trial court and in this court that its equitable indemnity claim against the City accrued in April 2011, when the Association filed a document entitled "Plaintiff's Preliminary Statement of Claim" pursuant to the case management order, and served a notice of claim pursuant to Civil Code section 910, identifying the cast iron waste pipe defect. In its petition, Centex reasoned, as it argued in the trial court, that the Association's notice of a claim "essentially operated as an amended complaint." Based on the premise that the Association had essentially amended its complaint in April 2011 by serving a notice of claim pursuant to Civil Code section 910, Centex requested leave to file its proposed cross-complaint seeking apportionment of the cast iron waste defect allegation in the notice of claim.

■ To the extent that Centex contends that its equitable indemnity complaint against the City accrued upon the Association's service of a notice of claim pursuant to Civil Code section 910, it is mistaken. A notice of claim pursuant to Civil Code section 910 must be filed "[*p*]*rior* to filing an action against any party alleged to have contributed to a violation of the standards set forth in Chapter 2 (commencing with Section 896) . . . ." (Italics added.)

Further, such a notice of claim merely "initiate[s] . . . *prelitigation* procedures" (Civ. Code, § 910, italics added), and is not equivalent to an amended complaint. Moreover, section 901 expressly states that an equitable indemnity claim accrues upon the service of "the *complaint* giving rise to the defendant's claim for equitable indemnity . . . against the public entity." (*Ibid.*, italics added.) Thus, the Association's April 2011 notice of claim did not cause the accrual of Centex's equitable indemnity claim against the City.

In its reply, Centex states in a footnote that, to the extent a notice of claim is not the same as a complaint, "Centex['s] equitable indemnity claim against the City has still not accrued since there is no 'complaint' filed or served by [the Association] against Centex that makes any claim related to plumbing defects." Centex is also mistaken in this regard. In October 2012, after the filing of Centex's proposed cross-complaint for equitable indemnity, the Association served Centex with the second amended complaint.[14] The second amended complaint alleges the precise claim for which Centex seeks indemnity from the City.[15] Thus, pursuant to section 901, Centex's equitable indemnity claim against the City accrued upon the Association's October 2012 service of the second amended complaint on Centex. On remand, the trial court is directed to permit Centex to file a cross-complaint seeking equitable indemnity against the City for the cast iron waste pipe defect allegation contained in the October 2012 second amended complaint.[16]

---

[14] As noted in footnote 7, *ante*, inexplicably, and to our great consternation, Centex did not refer to the second amended complaint in its briefing in this court.

[15] Paragraph No. 10 of the second amended complaint alleged "[p]lumbing violations, including but not limited to . . . defective cast iron waste piping . . . ."

[16] Although Centex filed a motion in the trial court for relief from the claims presentation requirement contained in section 911.2, because Centex filed its proposed cross-complaint for equitable indemnity *prior* to the accrual of that cause of action, no such claim need be presented to the City. (See *Frost, supra,* 26 Cal.3d at p. 763 ["[W]hen an equitable indemnity action is pursued prior to the accrual of the cause of action through a third party cross-complaint, no prior claim need be filed."].) Further, although Centex sought to file an equitable indemnity claim in the trial court prior to the actual accrual of that cause of action, a defendant is permitted to file "a 'declaratory' cross-complaint for equitable indemnity against a governmental entity . . . ." (*Id.* at p. 762, fn. 7.) In any event, since Centex's equitable indemnity cause of action has now accrued with the service of the October 2012 second amended complaint, on remand Centex may file its proposed cross-complaint seeking equitable indemnity from the City for the cast iron waste pipe defect allegation contained in the second amended complaint.

## IV.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its September 21, 2012 order. The stay of the trial issued on December 11, 2012, is vacated. The matter is remanded for further proceedings consistent with this opinion.

Centex is entitled to costs in this writ proceeding.

McDonald, Acting P. J., and O'Rourke, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied July 10, 2013, S210486.